# Arnett et al. v. Stumbo et al.

June 13, 1941.

Clark & Francis, Oscar P. Bond, and J. D. Bond for appellant.

Combs & Combs, S. S. Willis, and George B. Martin for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and a defendant below, W. L. Stumbo, was at the times herein stated a citizen of Floyd County. At the September, 1935, term of the Federal District Court at Catlettsburg, Kentucky, he was convicted of violating a federal statute and punished by two years' confinement in a penitentiary at Atlanta, Georgia. He carried his case through all of the Federal courts eventually landing in the Supreme Court of the United States and his conviction was upheld by all of them. He served a part of his time when he received a federal parole whereby he gained his liberty but the full two-year period of his sentence had expired before the beginning of this controversy. On February 5, 1940, Hon. Keen Johnson, then Governor of this Commonwealth, issued a certificate of restoration of the rights of citizenship to Stumbo wherein the above facts were recited followed by

this further declaration: "Now Know Ye, That in consideration of the premises and by virtue of the power vested in me by the Constitution, I do hereby grant unto the said Dr. W. L. Stumbo All Rights of Citizenship in Kentucky denied him in consequence of said conviction, and I direct that all officers of this State respect this restoration. In Testimony Whereof, I have caused these letters to be made patent, and the seal of the Commonwealth to be hereunto affixed. Done at Frankfort, the 5th day of February in the year of our Lord one thousand nine hundred and 40 and in the one hundred and 48th year of the Commonwealth.

"(Seal)                                Keen Johnson"

It was then attested by the Secretary of State and a copy of it delivered to Stumbo, who prior to the filing of this action, and within the time provided by law, filed with the defendant and appellee, A. B. Meade, County Court Clerk of Floyd County, his nominating papers asking that his name be printed on the official primary ballot for the August, 1941, primary election as a democratic candidate for the office of sheriff of Floyd County.

Following such filing the appellants, Boone Arnett and Ernest Boyd, as citizens and taxpayers of the county, as well as Democratic voters therein, filed this equity action in the Floyd Circuit Court against Stumbo and Meade (the latter being sued in his official capacity) to enjoin the printing of Stumbo's name on the primary ballot. The grounds for the relief sought were that under declared and constitutional laws of this Commonwealth Stumbo by virtue of his felony conviction, supra, lost his rights of citizenship within this Commonwealth whereby he became disqualified to either vote or hold office within it and could not be nominated in the primary election because of such ineligibility. It was further alleged in the petition that Stumbo had never received a pardon by the President of the United States for his offense and because of which his lost rights of citizenship by virtue of his conviction were never restored and that he was yet laboring under such deprivations. Defensive pleadings put in issue all allegations of the petition averring proper restoration, with affirmative averments setting out the restoration act of the Governor, which included the insertion in hac verba of the certificate of restoration issued by him. Plaintiffs filed a demurrer to that part of

the answer relying upon the gubernatorial restoration of Stumbo's citizenship rights and without waiving it they filed a reply in which the right of the Governor to act in the premises was denied. Defendants demurred thereto, and without waiving it they filed a rejoinder taking issue with the reply as to the authority of the Governor in the premises, and upon final submission the court sustained the authority of the Governor to issue such restoration and dismissed plaintiffs' petition to reverse which they prosecute this appeal.

The action involves the proper interpretation of two sections of our Constitution which if interpreted so as to uphold the judgment it will thereby become unnecessary to refer to, discuss or determine any question relating to any statute enacted pursuant to the Constitution since its two sections referred to are self-executing, and no statute enacted by the Legislature can dispense with their requirements or provisions. Those sections are Nos. 145 and 150. The first (145) will hereafter be referred to as the "voters section" while the second (150) will be referred to as the "office holders section." The pertinent part of the voters section says: "Persons convicted in any court of competent jurisdiction of treason, or felony, or bribery in an election, or of such high misdemeanor as the general assembly may declare shall operate as an exclusion from the right of suffrage; but persons hereby excluded may be restored to their civil rights by executive pardon." The pertinent part of the office holders section says: "All persons shall be excluded from office who have been, or shall hereafter be, convicted of a felony, or of such high misdemeanor as may be prescribed by law, but such disability may be removed by pardon of the governor." It will be perceived that persons losing their right of citizenship whereby they become disqualified to exercise the right of suffrage under the voters section "may be restored to their civil rights by executive pardon"; whilst the disqualification to seek and hold office under the office holding section "may be removed by pardon of the governor." There is no language in either of those sections expressly, inferentially or otherwise touching or dealing with a cancellation by any chief executive of the corporal punishment inflicted upon a convict for violation of any criminal law, the power to grant which is contained in Section 77 of our Constitution. The executive clemency provided for by both of the

sections referred to (145 and 150) goes no farther than to permit the chief executive to restore lost rights of citizenship to the one convicted so that he might thereafter possess such rights as though no conviction had ever occurred. The rights so lost pertain exclusively to participation in the selection and the holding of a public office in the Commonwealth each of which is taken away by the sections of the Constitution referred to, but which may be restored by executive clemency as therein provided. Clearly, therefore, such restoration relates solely to the qualifications of voters in this Commonwealth and to the qualifications of those who seek and obtain public office within it. They are each, therefore, exclusively local questions and appertain in like manner to our local state government, and each act of executive clemency so provided for in the two sections referred to must necessarily be performed, in order to effect such restorations, by our chief executive, who is the governor of the Commonwealth. Indeed the office holding section expressly so provides, whilst the voters section prescribes for the cancellation of such incurred disability ''by executive pardon,'' and which we construe to mean executive clemency exercised by the same official.

The entire foundation of plaintiffs' asserted grounds for relief is that Stumbo was never pardoned by the President of the United States and because thereof he was never restored to his rights of citizenship so as to qualify him to run for and hold the office he seeks, or the nomination for that office, it being axiomatic that if he was disqualified to hold the office when elected to it he is likewise disqualified from seeking it as the nominee of a political party. That contention necessarily carries with it the implication that a pardon by the chief executive of the sovereignty whose laws the convict violated is essential in order to restore the lost rights of one convicted of crime as set out in the two sections, supra, of our Constitution, and which rights, we repeat, relate exclusively to the right of suffrage and the holding of office in this Commonwealth. Manifestly, no chief executive of a foreign sovereignty could possess any authority whereby he might prescribe for or remove any such disabilities of citizens of a foreign jurisdiction to the one over which he presides, unless our local law prescribes that when such foreign executive clemency is exercised the rights taken away by the two sections of our Constitution re-

ferred to become ipso facto restored. There is no such declared enactment (constitutional or otherwise) in this Commonwealth and its chief executive (the governor) is expressly authorized by the sections referred to to lift the disabilities prescribed in them from the shoulders of the convict and to restore him to full and complete rights of citizenship. Such authority is in addition and supplementary to the strict pardoning power provided for by Section 77 of the same instrument.

But it is argued that in the case of City of Paris v. Hinton, Judge, etc., 132 Ky. 684, 116 S. W. 1197, 1198, 19 Ann. Cas. 114, this court held that the Governor of Kentucky could not pardon or remit a fine that had been assessed for the violation of a city ordinance, and which conclusion was reached through the interpretation of Section 77 of our Constitution as applied to statutes vesting such power in local authorities, and for which reason the governor could not interfere, since the violated law in that case was not one of the Commonwealth of Kentucky, but only one of a municipal unit within the Commonwealth which was vested with the power and authority to enact the ordinance. That opinion was based exclusively on the principle announced in the case of State v. Renick, 157 Mo. 292, 57 S. W. 713, in which the same question was involved and the Supreme Court of that state denied the right of the governor to remit, pardon or otherwise interfere with the prescribed penalty for the violation of the city ordinance. In our opinion approving and following that case we said ''The Constitution of the state of Missouri authorizing the pardoning of offenses by the Governor is substantially the same as ours. It was there held that the Governor of the state can pardon only those who are convicted of violations of state laws, and that his pardon of Carrie Neal was invalid.'' Again, fortifying the conclusion therein reached, there was incorporated, as a part of our opinion, the text in 24 Am. & Eng. Encyc. of Law, p. 569, saying ''The pardoning power of a Governor of a state or territory is confined in its operation to offenses against the laws of that state or territory. It does not include an offense against the laws of the United States, since such an offense is solely within the pardoning power of the President. Neither does it include an offense against a municipal corporation, such for instance, as the violation of a city ordinance.'' The principle contended for, and which we approved in the Hinton

opinion would, of course, be applicable here if there had been any effort on the part of Governor Johnson in this case to pardon Stumbo of any part of the corporal punishment inflicted upon him through his conviction in the Federal Court. We have pointed out, however, that no such effort was made by the executive clemency complained of and attacked in this case, but only the restoration of rights of citizenship which had become forfeited or lost in the manner pointed out by the two sections of the Constitution; but in each of which, provided methods for restoration are made and which may be done only by the Governor, or chief executive of the local sovereignty where such restored rights are to be exercised.

As well said in brief for appellees "It must be borne in mind that the disqualification which results from the conviction is not derived from the laws of the United States (or other convicting sovereignties), but rests solely upon the Constitution of Kentucky * * *. It is a collateral consequence, not flowing from the offense, but resulting to the offender by reason of the Constitutional provisions alone. The right to vote and to hold office in a state comes from the State and is subject to its regulation and control." We also approve another statement in the same brief saying "The conviction is not affected by the Governor's act; merely the incidental consequences (relating exclusively to suffrage and office holding rights in this Commonwealth) resulting from the operation of state laws, are cancelled and relieved."

We have not gone into the discussion of the doctrine of pardons strictly, so called, or their scope and effect—including what they may or may not embrace by implication when not specifically expressed—or any of the other matters treated of by courts or text writers discussing those questions, since the only one in this case is, whether or not under our Constitutional provisions the Governor of this Commonwealth had the authority to restore the citizenship rights of the defendant, Stumbo, in the circumstances detailed. Our conclusion is that he did and that in doing so he not only exercised authority that he possessed but that it was exercised in the manner pointed out by law and for which reasons the court was correct in dismissing the petition.

Wherefore for the reasons stated the judgment is affirmed. The whole court sitting.