**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Pearl BARRETT, Defendant-Appellant.**

No. 73–1872.

United States Court of Appeals, Sixth Circuit.

Oct. 18, 1974.

Certiorari Granted Feb. 18, 1975. See 95 S.Ct. 1119.

---

McCree, Circuit Judge, concurred in part and dissented in part and filed an opinion.

Thomas A. Schaffer, Graham, Schaffer & West, Cincinnati, Ohio (Court Appointed—CJA) for defendant-appellant; Pearl Barrett, pro se.

Eugene E. Siler, Jr., U. S. Atty., Robert M. Murphy, Lexington, Ky., for plaintiff-appellee.

Before WEICK, EDWARDS and McCREE, Circuit Judges.

WEICK, Circuit Judge.

The indictment charged that appellant Barrett, having been convicted in the state court of a felony, housebreaking, knowingly received and had in his possession a firearm, towit, a .32 caliber Smith and Wesson revolver, which had been transported in interstate commerce, 18 U.S.C. § 922(h). He was tried and convicted by a jury and was sentenced to three years' imprisonment.

Barrett had purchased the revolver on April 1, 1972, in a Western Auto Store in Booneville, Kentucky. Western Auto Store had received the gun on March 5, 1972 from Gastonia, North Carolina.

About one-half hour after Barrett had purchased the revolver he was observed by two deputy sheriffs driving his automobile south of Booneville. After the officers chased his car a short distance he stopped, and they arrested him for

driving while intoxicated. One of the deputies then noticed the firearm on the floor board on the driver's side of Barrett's car; it was loaded.

Barrett had been convicted previously on January 17, 1967, of the housebreaking charge, and was sentenced to two years' imprisonment. On June 20, 1969, after Barrett served his sentence, the Governor of Kentucky signed a partial pardon restoring Barrett only to his civil rights.

Barrett contended in the District Court and here that his purchase of the firearm from the dealer was an intrastate transaction, not within the scope of Section 922(h), and that, in any event the document which he received from the Governor of Kentucky constituted a full pardon and therefore his previous conviction had been wiped out.

## I

### THE STATUTE

Section 922(h) provides in relevant part:

(h) It shall be unlawful for any person—

(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

. . . . . .

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

This section is part of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968.

It would appear to us that under the Government's proof this statute has been literally complied with. The firearm indeed had been transported in interstate commerce, from North Carolina to Kentucky, less than one month before Barrett received it.

Barrett relies on dictum contained in the majority opinion in United States v. Bass, 404 U.S. 336 at 342–343, 92 S.Ct. 515, 520, 30 L.Ed.2d 488 (1971). *Bass* involved a prosecution under Title VII of the Omnibus Crime Control and Safe Streets Act, while the prosecution in the present case was under Title IV of the Act. The dictum is as follows:

. . . [H]owever, Title IV apparently does not reach possessions or intrastate transactions at all, even those with an interstate commerce nexus, but is limited to the sending or receiving of firearms as part of an interstate transportation.[10]

Footnote 10 reads as follows:

Title IV, 18 U.S.C. §§ 922(g) and (h), is a modified and recodified version of 15 U.S.C. §§ 902(e) and (f) (1964 ed.), 75 Stat. 757, which in turn amended the original statute passed in 1938, 52 Stat. 1250, 1251. Each amendment enlarged the group of people coming within the Act's substantive prohibitions against transportation or receipt of firearms in interstate commerce. The wording of the substantive offense has remained identical, although the original Act had a provision that possession of a firearm "shall be presumptive evidence that such firearm or ammunition was shipped or transported or received [in interstate or foreign commerce]." That presumption was struck down in Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), and the Court there noted:

"[T]he Act is confined to the receipt of firearms or ammunition as a part of interstate transportation and does not extend to the receipt, in an intrastate transaction, of such articles which, at some prior time, have been transported interstate." *Id.*, at 466, 63 S.Ct., at 1244.

While the reach of Title IV itself is a question to be decided finally some other day, the Government has presented here no learning or other evidence indicating that the 1968 Act changed the prior approach to the "receipt" offense. See, *e. g.*, S.Rep. No. 1097, 90th Cong., 2d Sess., 115 (1968). (404 U.S. at 343, 92 S.Ct. at 520)

By reference to *Tot,* the complete sentence, of which the foregoing quotation is a part, is as follows:

Both courts below held that the offense created by the Act is confined to the receipt of firearms or ammunition as a part of interstate transportation and does not extend to the receipt, in an intrastate transaction, of such articles which, at some prior time, have been transported interstate. (319 U.S. at 466, 63 S.Ct. at 1244).

The Court in *Tot* further said:

The Government agrees that this construction is correct. (*Id.* at 466, 63 S.Ct. at 1244).

It therefore appears that the Government conceded that the construction of the statute by the lower courts was correct, and that the Supreme Court accepted the concession without discussion. In *Tot* all that the Court decided was that the presumptive provision in the Act was invalid.

In the present case the Government has made no such concession, and we are required to decide the issue. Footnote 10 in *Bass* recognized that "the reach of Title IV itself is a question to be decided finally some other day . . . ."[1]

It is our opinion that there is no ambiguity in Section 922(h) of the Act. It means exactly what it says.

 Barrett did indeed receive a firearm which had been transported in interstate commerce. Such receipt violated the plain language of the statute. It was not necessary for the Government to prove that Barrett received the firearm from the common carrier.

II

THE PARDON

It will be noted that Section 922(h) contains no exemption for any one who has been pardoned.

Barrett in the District Court relied on the exemption contained in 18 U.S.C. § 1203 Appendix, which appears in 18 U.S. C. § 3531 to End, page 496, and reads as follows:

§ 1203 Exemptions

This title shall not apply to—

(1) any prisoner who by reason of duties connected with law enforcement has expressly been entrusted with a firearm by competent authority of the prison; and

(2) any person who has been pardoned by the President of the United States or the chief executive of a State and has expressly been authorized by the President or such chief executive, as the case may be, to receive, possess, or transport in commerce a firearm.

Section 1203 is part of Title VII of the Act and would not appear to apply to an indictment under Title IV of the Act. But if the exemption did apply, it would not help Barrett because the alleged pardon did not authorize him to receive the firearm.

The pardon reads as follows:

To all to Whom These Presents Shall Come, Greeting:

Whereas, It is represented to me that the conduct of PEARL BARRETT has been of an exemplary nature and merits the restoration of all civil rights lost by reason of conviction of a felony.

Now Know Ye, That in consideration of the premises and by virtue of the power vested in me by the Constitution, I do hereby grant unto the said PEARL BARRETT

ALL THE RIGHTS OF CITIZENSHIP

denied him in consequence of said judgment of conviction, and I direct that all officers of this State respect this restoration.

---

1. The dictum in *Bass* was discussed in our decision in United States v. Craven, 478 F.2d 1329, 1336 (6th Cir. 1973), where there had been a second and more recent transportation of the firearm in interstate commerce, which we held was sufficient to support a conviction under Section 922(h).

In Testimony Whereof, I have caused these letters to be made patent and the seal of the Commonwealth to be hereunto affixed. Done at Frankfort, the 20th day of June in the year of our Lord one thousand nine hundred and 69 and in the one hundred and 78th year of the Commonwealth.

[SEAL] /s/ Louie B. Nunn

By the Governor

All that the pardon purported to do was to restore "all civil rights lost by reason of conviction of a felony."

Section 77 of the Kentucky Constitution provides:

He [the Governor] shall have the power to . . . commute sentences, grant reprieves and pardons, except in case of impeachment.

In Herndon v. Commonwealth, 105 Ky. 197 at 200, 48 S.W. 989 at 990 (1899), the Court quoted the following language taken from Mount v. Conn., 2 Duv., 93, with respect to a Section 77 pardon:

The pardon relieved the convict of the entire penalty incurred by the offense pardoned, and nothing else or more.

■ The civil rights to which Barrett was restored by the pardon were the right to suffrage provided for in Section 145 of the Kentucky Constitution, the right to hold public office as provided in Section 150 of the Constitution, and the right to serve on a jury, provided in K.R.S. 29.025. These constitutional and statutory provisions expressly state that their civil rights are restored by the pardon.

The differences between a pardon merely restoring civil rights and a pardon relieving a convict of the penalty are pointed out in Arnett v. Stumbo, 287 Ky. 433, 435–436, 153 S.W.2d 889, 890 (1941), where the Court stated:

It will be perceived that persons losing their right of citizenship whereby they become disqualified to exercise the the right of suffrage under the voters section "may be restored to their civil rights by executive pardon"; whilst the disqualification to seek and hold office under the office holding section "may be removed by pardon of the governor". There is no language in either of those sections expressly, inferentially or otherwise touching or dealing with a cancellation by any chief executive of the corporal punishment inflicted upon a convict for violation of any criminal law, the power to grant which is contained in Section 77 of our Constitution. The executive clemency provided for by both of the sections referred to (145 and 150) goes no farther than to permit the chief executive to restore lost rights of citizenship to the one convicted so that he might thereafter possess such rights as though no conviction had ever occurred. The rights so lost pertain exclusively to participation in the selection and the holding of a public office in the Commonwealth each of which is taken away by the sections of the Constitution referred to, but which may be restored by executive clemency as therein provided. Clearly, therefore, such restoration relates solely to the qualifications of voters in this Commonwealth and to the qualifications of those who seek and obtain public office within it.

The Court further said:

. . . [The Governor] is expressly authorized by the sections referred to [Secs. 145 and 150] to lift the disabilities prescribed in them from the shoulders of the convict and to restore him to full and complete rights of citizenship. Such authority is in addition and supplementary to the strict pardoning power provided for by section 77 of the same instrument. (287 Ky. at 437, 153 S.W.2d at 891).

In Illinois Cent. R. R. v. Bosworth, 133 U.S. 92, 103, 10 S.Ct. 231, 234, 33 L.Ed. 550 (1890), the Supreme Court stated the effect of a full pardon:

In the opinion of the court in the case of Ex parte Garland, 4 Wall. 333, 380, [18 L.Ed. 366,] the effect of a pardon is stated as follows, to wit: "A

pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and, when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence. . . . ."

In 67 C.J.S. Pardons § 1b, at 562–563, the several kinds of pardons are discussed:

There are several kinds of pardons; thus a pardon may be full or partial, absolute or conditional. A pardon is full when it freely and unconditionally absolves the person from all the legal consequences of his crime and of his conviction, direct and collateral, including the punishment, whether of imprisonment, pecuniary penalty, or whatever else the law has provided; it is partial where it remits only a portion of the punishment or absolves from only a portion of the legal consequences of the crime. (Footnotes omitted).

■ It is clear to us that the pardon in the present case was not a full pardon, but only a partial pardon. There was no remission of guilt, nor of the penalty. The only thing accomplished by the pardon was a restoration of civil rights under Kentucky law.

The rule of United States v. Renner, 496 F.2d 922 (6th Cir., 1974), should be confined to the facts of that case. The present case involved a question of Kentucky law relating to pardons, and appellant is bound by Kentucky law.

Affirmed.

McCREE, Circuit Judge (concurring in part and dissenting in part).

I concur in that part of the court's opinion holding that appellant cannot avail himself of the exemption contained in 18 U.S.C. § 1203 Appendix, but only because that exemption is not available to a defendant tried for violation of 18 U.S.C. § 922(h). That exemption applies only to convicted felons charged with receipt of firearms contrary to 18 U.S.C. § 1202. Appellant was indicted under a similar statute, 18 U.S.C. § 922 (h), also for receipt of a firearm. The exemption applicable to this offense, provided for in 18 U.S.C. § 925, requires a convicted felon who desires to acquire a firearm contrary to the provisions of § 922(h) to secure the express permission of the Secretary of the Treasury, not a gubernatorial pardon.

I respectfully dissent from that part of the court's opinion holding that the government established that appellant's purchase of the gun from a local dealer satisfied the interstate commerce requirement of 18 U.S.C. § 922(h). In Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L. Ed. 1519 (1943), the Supreme Court was presented with two cases that required it to construe and to determine the validity of the predecessor statute to section 922 which provided:

It shall be unlawful for any person who has been convicted of a crime of violence or is a fugitive from justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce, and the possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped or transported or received, as the case may be, by such person in violation of this Act. *Id.* at 464, 63 S.Ct. at 1243, *quoting* C. 850, 52 Stat. 1250, 1251; 15 U.S.C. § 902(f).

The Supreme Court observed in its opinion that two federal courts of appeals, including this court, had held that "the offense created by the Act is confined to the receipt of firearms or ammunition as a part of interstate transportation and does not extend to the receipt, in an intrastate transaction, of such articles which at some prior time, have been transported interstate." *Id.* at 466, 63 S.Ct. at 1244. The Court adopted this construction as authoritative in order to determine the validity of the presumption that Congress had created in the second portion of the statue. It invalidated the presumption because there was

"no rational connection between the fact proved [possession] and the ultimate fact [receipt in an interstate transaction] presumed. . . ." *Id.* at 467, 63 S.Ct. at 1214. Possession of a gun, the Court held, afforded "no reasonable ground for a presumption that its purchase or procurement was in interstate rather than in intrastate commerce." *Id.* at 468, 63 S.Ct. at 1245. Because the Supreme Court in *Tot* authoritatively construed § 2(f) of the Federal Firearm Act, the predecessor to section 922(h), I believe that the phrase in section 922(h), "which has been shipped or transported in interstate or foreign commerce," must be construed in the same manner as the identical phrase, "which has been shipped or transported in interstate or ·foreign commerce," of section 2(f). Accordingly, I would hold, as the Supreme Court did in *Tot,* that the mere shipment of a weapon in interstate commerce at some time before purchase in an intrastate transaction is an insufficient nexus with interstate commerce ·to satisfy the requirements of section 922(h).

In United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), the Supreme Court reiterated that it had construed authoritatively section 2(f) in *Tot* and stated that section 922(h) "apparently does not reach possessions or intrastate ·transactions at all, even those with an interstate commerce nexus, but is limited to the sending or receiving of firearms as part of an interstate transportation." *Id.* at 342–343, 92 S.Ct. at 520. In *Bass* the Court, in construing 18 U.S.C. § 1202(a), concluded that with respect to that statute "the Government meets its burden . . . if it demonstrates that the firearm received has previously traveled in interstate commerce," and observed that "this reading preserves a significant difference between the 'receipt' offenses under Title IV [containing section 922(h)] and Title VII [containing section 1202(a)]." *Id.* at 350, & n. 18, 92 S.Ct. 524. Moreover, the Court observed that the government had not demonstrated that Congress, in enacting section 922(h) in 1968, in language iden-tical to that of section 2(f) of the Federal Firearms Control Act, had intended to change and broaden its earlier construction of this language in *Tot.* The government has also failed to offer in connection with this appeal any proof of ·a Congressional change of intent.

Not only has the Supreme Court indicated that the "receipt" offense of section 922(h) is more limited than that defined by section 1202(a), but also this court has adopted a similar construction. In United States v. Craven, 478 F.2d 1329 (6th Cir.), cert. denied, 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973), reh. denied, 414 U.S. 1086, 94 S.Ct. 606, 38 L.Ed.2d 491, appellant contended that the government had failed to demonstrate receipt in violation of section 922(h). We observed that the Supreme Court's interpretation of the interstate character of the receipt requirement in *Bass* "comport[ed] with the accepted interpretation of the predecessor statutes of § 922 (h)," and "conclude[d] that 18 U.S.C. § 922(h) speaks only of receipt of firearms or ammunition in interstate transportations and does not concern possessions at all." *Id.* at 1336. Applying this test, we affirmed the conviction because within a few days after the theft of a police officer's gun in Ohio, appellant was found in possession of it in Kentucky.

Finally, in United States v. Ruffin, 490 F.2d 557 (8th Cir. 1974), not cited by either party to this appeal, the court held that "for a receipt to be cognizable under § 922(h), the government must show that at the time the gun was received it was *part* of an interstate transportation." *Id.* at 560. Accordingly, when the evidence showed only that a gun, found in appellant's possession in Missouri, had been stolen seven months earlier in Illinois from an interstate common carrier, appellant's conviction had to be reversed. The evidence was deemed insufficient to show that receipt of the gun was part of an interstate transportation.

When the Supreme Court authoritatively construes a statute, and Congress preserves its original language in enact-

ing successor statutes, I believe that the scope of the statute's prohibition remains the same, in the absence of evidence that Congress intended identical language in a successor statute to mean something different from its meaning in the original statute. In this case, appellant's purchase of the weapon was a purely intrastate transaction even though the gun had once been shipped in interstate commerce from the manufacturer to the dealer where it came to rest before it was sold to appellant. This evidence is insufficient to demonstrate the connection with interstate commerce required by 18 U.S.C. § 922(h). Accordingly, I would reverse appellant's conviction.