4 F.3d 995
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gary Scott MAXEY, Defendant-Appellant.
 No. 92-6094.
 United States Court of Appeals, Sixth Circuit.
 Aug. 17, 1993.
 
 On Appeal from the United States District Court for the Eastern District of Kentucky, No. 92-00013; Forester, J.
 E.D.Ky.
 AFFIRMED.
 BEFORE: KEITH and KENNEDY, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant was convicted of being a felon in possession of a firearm, a violation of 18 U.S.C. Sec. 922(g)(1). Defendant appeals asserting that he was not a felon within the meaning of section 922 because his civil rights, which he lost when convicted of an earlier Kentucky felony, had been restored by action of the governor of Kentucky. Defendant also appeals his sentence and the District Court's decision to grant the government's motion in limine. We affirm.
 
 I.
 
 2
 In 1979, defendant Gary Scott Maxey was convicted of attempted robbery in the Circuit Court of McCreary County, Kentucky, and sentenced to five years in prison and five years of probation. On February 8, 1985, the governor of Kentucky restored to defendant "All the Rights of Citizenship" denied him as a consequence of the conviction (the "Certificate"). In July, 1991, federal Alcohol, Tobacco, and Firearms ("ATF") agents were notified by local authorities, familiar with Maxey's convict status, that Maxey had been involved in a domestic dispute and had allegedly been in possession of a gun. The ATF agents traced the gun to the store of purchase. Its records disclosed that Maxey was the purchaser. Maxey had signed the official transferee record acknowledging receipt of the gun and that he was not a convicted felon.
 
 
 3
 Defendant was indicted in a two-count indictment for being a felon in possession of a firearm, a violation of 18 U.S.C. Sec. 922(g)(1) (Count I), and for making a false statement in connection with the acquisition of a firearm, a violation of 18 U.S.C. Sec. 922(a)(6) (Count II). The United States requested a pretrial ruling on the legal effect of the Certificate because defendant intended to argue that the Certificate operated to remove his federal firearm disability. Defendant filed a response. The United States filed a reply and a motion in limine, which asked the court to prohibit defendant from arguing at trial that the Certificate established his innocence if the court decided the pretrial motion in the government's favor, i.e., if the court decided that the Certificate did not alter defendant's status as a convicted felon. Because the Certificate would be admissible on Count II, the United States moved the court to dismiss Count II. On June 9, 1992, the court ruled that the Certificate did not bar prosecution of defendant on the firearms charge. The court also granted the motion in limine and dismissed Count II of the indictment.
 
 
 4
 Defendant rejected an offer by the United States to propose a conditional plea agreement. Following a one-day trial, defendant was convicted of Count I. Defendant filed objections to the presentence report, including one for the failure to give a two-point reduction for acceptance of responsibility. The court overruled defendant's objections and imposed a twenty-seven month sentence.
 
 II.
 
 5
 Defendant maintains that he may not be prosecuted for being a felon in possession of a firearm because the Certificate operated to remove him from the class of convicted felons. Section 922(g)(1) provides in pertinent part:
 
 
 6
 It shall be unlawful for any person--
 
 
 7
 who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
 
 
 8
 to ... possess in or affecting commerce, any firearm....
 
 
 9
 18 U.S.C.A. Sec. 922(g)(1) (West Supp.1993). Congress has defined the type of "crime punishable by imprisonment for a term exceeding one year" that may serve as the underlying felony conviction for this offense.
 
 
 10
 What constitutes a conviction of [a "crime punishable by imprisonment for a term exceeding one year"] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess or receive firearms.
 
 
 11
 18 U.S.C.A. Sec. 921(a)(20) (West Supp.1993).
 
 
 12
 A plain reading of the statutory language would indicate that a conviction for which civil rights have been restored would not serve as a conviction for purposes of the statute unless the restoration itself expressly prohibits the possession of firearms. However, after reviewing the legislative history, a panel of this Court concluded in United States v. Cassidy, 899 F.2d 543 (6th Cir.1990), that the intent of Congress would be frustrated if courts focused solely on the document of restoration, pardon or expungement. We first determined that Congress intended that a defendant's convicted felon status be controlled by state law. Next, we established a two-step analysis. First, we asked whether enough of the defendant's civil rights had been restored to have effected a restoration of civil rights for purposes of section 921(a)(20). If a defendant is entitled to vote, to serve on a jury, and to hold elective office, then his civil rights have been restored under this section.
 
 
 13
 The second step, taken only if the defendant's civil rights were indeed restored, asks whether state law expressly restricts the defendant from possessing a firearm. Despite the limiting nature of the statutory language, we concluded that Congress intended that the firearm restriction need not arise from the face of the certificate of restoration. Rather, the inquiry was whether state law permitted the felon to possess a gun after restoration of civil rights.
 
 
 14
 As we are bound by Cassidy, we turn to an examination of Kentucky law. The Certificate that defendant received operated to restore to him "all rights of citizenship denied him in consequence of said judgment of conviction." It does not expressly limit defendant's right to possess firearms. In restoring these rights, the governor acted pursuant to the authority of sections 145 and 150 of the Constitution of the Commonwealth of Kentucky. Section 145 strips the right to vote from persons convicted of a felony. Similarly, section 150 disqualifies convicted felons from holding elective office. Both sections provide that these disabilities may be removed by pardon of the governor. Disqualifications from jury service are found in K.R.S. Sec. 29A.080 and not in the Constitution of the Commonwealth. A person previously convicted of a felony is eligible to serve on a jury only if he has been pardoned by the governor.
 
 
 15
 Clearly, the Certificate operated to restore defendant's right to vote and to hold elective office. It is not so clear whether the Certificate, which restored all civil rights denied by the conviction, also enabled defendant to serve on a jury. If the jury right had been revived, the first step of Cassidy would be satisfied since defendant's civil rights have been restored for purposes of section 921(a)(20). Here, the government for the purpose of this case stipulated that defendant had the right to serve on a jury. But we do not express any opinion on this question, and skip to step two, because we believe defendant cannot possess a firearm under Kentucky law.
 
 
 16
 In Kentucky, a convicted felon commits a class D felony by possessing a handgun, unless such person has been granted a full pardon by the governor or by the President. K.R.S. Sec. 527.040 (emphasis supplied). The governor has the power to grant such pardons under section 77 of the Kentucky Constitution. Defendant argues that the restoration of civil rights under sections 145 and 150 of the Constitution is the equivalent of a section 77 pardon, and that he is, therefore, not restricted from possessing a handgun under Kentucky law. If the law of the Commonwealth does not restrict his possession of firearms, then he cannot be prosecuted for federal firearms violations under sections 922(g)(1) and 921(a)(20).
 
 
 17
 The Court of Appeals of Kentucky has, however, held that the governor's action under section 145 or 150 is not the equivalent of a pardon under section 77. Arnett v. Stumbo, 153 S.W.2d 889, 891 (Ky.1941). In Arnett, Mr. Stumbo, a convicted federal felon, sought to run for sheriff of Floyd County, Kentucky. The Governor of Kentucky issued a certificate of restoration of rights of citizenship to Stumbo that is virtually identical to the Certificate in the present case. The governor granted Stumbo "All Rights of Citizenship in Kentucky denied him in consequence of said conviction." Those opposing Stumbo's candidacy sought to enjoin it on the grounds that his conviction made him ineligible to hold elected office or to vote, which in turn disqualified him from the election. The opponents alleged further that a Presidential pardon of the federal conviction would be required to remove these disabilities. The court rejected this argument.
 
 
 18
 The court recognized that Kentucky could not pardon the convictions of a foreign sovereign. It drew a distinction between what it termed the "executive clemency" provisions of sections 145 and 150 and the full pardoning power found in section 77.
 
 
 19
 There is no language in either of those sections expressly, inferentially or otherwise touching or dealing with a cancellation by any chief executive of the corporal punishment inflicted upon a convict for violation of any criminal law, the power to grant which is contained in section 77 of our Constitution. The executive clemency provided for by both of the sections referred to (145 and 150) goes no farther than to permit the chief executive to restore lost rights of citizenship to the one convicted so that he might thereafter possess such rights as though no conviction had ever occurred.
 
 
 20
 ....
 
 
 21
 [The governor] is expressly authorized by the sections referred to to lift the disabilities prescribed in them from the shoulders of the convict and to restore him to full and complete rights of citizenship. Such authority is in addition and supplementary to the strict pardoning power provided for by section 77 of the same instrument.
 
 
 22
 ....
 
 
 23
 The conviction is not affected by the Governor's act [in restoring a convicts civil rights]; merely the incidental consequences (relating exclusively to suffrage and office holding rights in this Commonwealth) resulting from the operation of state laws, are cancelled and relieved.
 
 
 24
 Arnett, 153 S.W.2d at 890, 891-92. See also, Leonard v. Corrections Cabinet, 828 S.W.2d 668, 673 (Ky.App.1992) (noting differences in an "outright pardon pursuant to Sec. 77 of [Kentucky's] constitution and a restoration of suffrage rights under Sec. 145 or the right to be elected to a public office under Sec. 150."); Stewart v. Commonwealth, 479 S.W.2d 23, 26 (Ky.1972) (same).
 
 
 25
 Thus, in Kentucky, there is a distinction between a restoration of all civil rights denied a person because of a felony conviction and a pardon of conviction under section 77. Since the governor did not grant Maxey a "full pardon" under section 77, K.R.S. Sec. 527.040(1) prohibits Maxey from possessing a handgun. As Kentucky law restricts Maxey in this way, his conviction is still alive under Cassidy's interpretation of 18 U.S.C. Sec. 921(a)(20), and he is subject to prosecution under section 922(g)(1).
 
 III.
 
 26
 The United States filed a motion in limine requesting that the court prohibit defense counsel from arguing defendant's innocence to the jury on the theory that defendant thought the Certificate removed the conviction from his record. The court granted the motion and defendant contends this was error.
 
 
 27
 The decision to admit or exclude evidence is within the sound discretion of the trial court and should be reversed on appeal only for clear abuse of discretion. United States v. Phillips, 888 F.2d 38, 40 (6th Cir.1989). Abuse of discretion exists where the reviewing court is firmly convinced that a mistake has been made. Id.
 
 
 28
 Defendant contends that whether or not he believed that the Certificate enabled him to possess a gun is a relevant question of fact that should have been submitted to the jury. He argues that he did not knowingly violate section 922(g)(1) because he believed that the Certificate removed any firearm disabilities the conviction imposed. Defendant concedes that he knowingly possessed the firearm and that it traveled in interstate commerce. Defendant presents as the only issue in this case the question of whether he is a convicted felon for purposes of section 921(a)(20). As did the court below, we have determined that defendant is a convicted felon for purposes of this section. The effect of the Certificate on defendant's status as a felon or non-felon is a purely legal question and is outside of the province of the jury. This question was decided by the court when it granted the government's pre-trial motion; defendant was not entitled to a chance to convince the jury to acquit defendant on a contrary legal conclusion. The court did not abuse its discretion in granting the government's motion in limine.
 
 IV.
 
 29
 Next, defendant argues that the court erred in denying him a two level decrease for acceptance of responsibility under the Sentencing Guidelines. We review this denial for clear error. United States v. Osborne, 948 F.2d 210, 211 (6th Cir.1991). On this matter, the court found that Maxey did not clearly recognize and accept his responsibility. Although defendant now concedes that he knowingly possessed the gun, his strategy throughout trial was to create a doubt that he ever possessed the gun.
 
 
 30
 Defendant argues essentially that the reason he didn't accept responsibility for the offense is because he believed that the Certificate established his innocence. At the sentencing hearing, the government offered the testimony of defendant's probation officer to show that this position was not held in good faith. The probation officer, who helped defendant and hundreds of others to obtain restoration certificates, testified that as a general practice he advises parolees that the restoration of civil rights gives them the right to vote and hold public office, but not the right to have a firearm. The restoration application, signed by defendant, provided as follows:
 
 
 31
 Restoration of civil rights does not give a convicted felon the right to purchase, own, or have in possession a firearm or other weapon. Relief from this disability must be obtained from the U.S. Secretary of the Treasury Department.
 
 
 32
 Joint App. at 53. Defendant testified that he did not remember the officer telling him that he couldn't possess a gun and that he just glanced at the application before signing it.
 
 
 33
 The court found the officer's testimony to be more credible than defendant's testimony. The court denied the reduction because it found defendant had not exhibited any contrition. This finding is not clearly in error.
 
 V.
 
 34
 Accordingly, the judgment of the District Court is AFFIRMED.