**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Ronald Anthony MITCHELL,
Defendant-Appellant.**

**No. 77–1391.**

United States Court of Appeals,
Ninth Circuit.

July 20, 1977.

Roger L. Thomson, Oceanside, Cal., on briefs, for defendant-appellant.

James L. Duchnick, Special Asst. U. S. Atty., Terry J. Knoepp, U. S. Atty., San Diego, Cal., on briefs, for plaintiff-appellee.

Before BARNES, WALLACE and SNEED, Circuit Judges.

SNEED, Circuit Judge:

Mitchell, previously convicted of a felony, here appeals his recent federal conviction on three counts under 18 U.S.C. § 922(h), a portion of the Gun Control Act of 1968, Pub.L. No. 90–618, 82 Stat. 1213 (1968). Section 922(h) reads in relevant part:

> It shall be unlawful for any person—(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Appellant concedes that in 1959 he was convicted of vehicle theft, a state offense punishable by more than one year in prison. He contends, however, that section 922(h) is applicable only to concealable weapons, not sporting firearms such as the rifle and two shotguns found in his possession. Alternatively, he contends that there was insufficient evidence to show his receipt of the weapons from interstate commerce. We find both contentions without merit and affirm his conviction on each of the three counts.

## I.

### The Facts.

The facts, stipulated for the purposes of this appeal, are as follows: On June 23, 1976, appellant Mitchell appeared at the parole revocation hearing of one Larry Gaskins. Appellant there testified that a Winchester twelve-gauge shotgun found in a garage, to which Gaskins had a key, had been placed there by appellant for storage until he could decide what to do with the weapon. Appellant stated that this shotgun, which later formed the basis of Count One against appellant, had been turned over to him by a friend subsequent to the death of its owner. On the basis of this testimony and further hallway conversation with police officers, in which appellant fully described and admitted having three other firearms at his home, a search warrant was issued on July 1, 1976. The next day, July 2, 1976, Mitchell was arrested at his home. Two of the firearms he had described were found, a Remington twelve-gauge shotgun and a Winchester .308 rifle. Both were found behind items of furniture. These firearms, which formed the basis for Counts Two and Three, had been purchased by Mrs. Mitchell locally and were registered in her name. According to the stipulation, these firearms were acquired pursuant to plans of the couple to go hunting. All three firearms had been manufactured outside California and had subsequently moved in interstate commerce at some time prior to seizure.

## II.

### Rifles and Shotguns Are "Firearms."

At the outset, we note that appellant does not challenge the constitutionality of the statute, but merely asserts that it is inapplicable to him. Foremost, he contends that "firearm," as used in 18 U.S.C. § 922(h), does not include shotguns and rifles. As defined in the Gun Control Act of 1968, 18 U.S.C. § 921(a)(3)(A), the term "firearm" includes "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." While the Act does contain language to the effect that Congress did not intend to burden hunting, trapshooting, and other lawful use of firearms by law-abiding citizens, 82 Stat. 1213, Title I, § 101, the plain language of 18 U.S.C. § 922(h) prohibits the acquisition of "any firearm" by a felon. The fact that Congress distinguished rifles and shotguns from other firearms for purposes of other restrictions elsewhere in the Act, e. g. 18 U.S.C. § 922(b)(1), demonstrates that un-

der 18 U.S.C. § 922(h) Congress, by using the comprehensive term "firearm" without qualification, did not intend to remove rifles and shotguns from the reach of this provision.

### III.

#### Appellant "Received" Firearms.

We turn, therefore, to appellant's assertion that there is insufficient evidence that he "received" the firearms from interstate commerce. On appeal, Mitchell approaches the issue somewhat differently with respect to the shotgun in Count One on the one hand, than he does the shotgun and rifle in Counts Two and Three on the other. We note first that in *Barrett v. United States,* 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976), the Supreme Court specifically construed 18 U.S.C. § 922(h) as not requiring direct interstate receipt. The Court there held that the statute has quite broad application:

> The very structure of the Gun Control Act demonstrates that Congress did not intend merely to restrict interstate sales but sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous. These persons are comprehensively barred by the Act from acquiring firearms by any means.

423 U.S. at 218, 96 S.Ct. at 502.

■ Appellant contends, however, that as the Count I shotgun has not moved in interstate commerce since passage of the Act, it cannot provide a proper basis for conviction. On this matter *Barrett* is helpful, for the Supreme Court distinguished the conduct proscribed by the statute from the prior interstate movement of the firearm:

> Section 922(h) pointedly and simply provides that it is unlawful for four categories of persons, including a convicted felon, "to receive any firearm or ammuni-

tion which has been shipped or transported in interstate commerce." The quoted language is without ambiguity. It is directed unrestrictedly at the felon's receipt of any firearm that "has been" shipped in interstate commerce. It contains no limitation to a receipt which itself is part of the interstate movement.

423 U.S. at 216, 96 S.Ct. at 501.

Thus, if interstate movement need not be contemporaneous with, nor immediately precede, receipt, there appears no reason why such movement cannot precede the passage of the Act. Nothing in 18 U.S.C. § 922(h) suggests to the contrary and such an interpretation poses no retroactivity problems because the "receipt," not the interstate movement, is the gravamen of the crime.[1]

■ Appellant contends further that he has in no way received the Count II and III firearms which were purchased and registered by his wife. Were this argument accepted, the purpose of Congress could be defeated by the simple device of keeping ownership of firearms in the name of a spouse or other willing party. Nothing in 18 U.S.C. § 922(h) indicates that a sine qua non of "receipt" is ownership properly evidenced. Freed of such a constraint the trial court reasonably could find on the basis of the stipulations that appellant "received" the Count II and III firearms as well as that under Count I. The appellant's physical control of these weapons and his admission to police that he kept such weapons constitute strong support for this conclusion.

**AFFIRMED.**

---

1. We note that the nexus required with the interstate commerce power has been found satisfied where the firearm received has once been transported in interstate commerce. *United States v. Lathan,* 531 F.2d 955 (9th Cir. 1976); *United States v. Giannoni,* 472 F.2d 136 (9th Cir.), *cert. denied,* 411 U.S. 935, 93 S.Ct. 1911, 36 L.Ed.2d 396 (1973).