**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Edward Henry ROBBINS,**
**Defendant-Appellant.**

**No. 78–1056.**

United States Court of Appeals,
Ninth Circuit.

Aug. 10, 1978.

John Caughlan, Seattle, Wash., for defendant-appellant.

J. Ronald Sim, A.U.S.A., Seattle, Wash., for plaintiff-appellee.

Before DUNIWAY and CHOY, Circuit Judges, and GRANT,* District Judge.

DUNIWAY, Circuit Judge:

Robbins was convicted under both counts of a two count indictment charging violations of 18 U.S.C. § 922(h) and 18 U.S.C. Appendix § 1202(a).

## I.

### THE FACTS.

Robbins had been convicted of burglary, a felony, in the state of Minnesota in 1966 and of a federal felony in 1971. On December 6, 1976, he consented to a search of his pickup truck by local police in Arlington, Washington. The police found under the driver's seat a triple action safety model Hopkins & Allen .38 pistol in a holster with a cartridge belt containing live ammunition. The pistol was loaded. Robbins was using the alias of Greene and consequently his felony convictions were not then known to the police. He was charged in the Justice Court of the Cascade District with a misdemeanor, carrying a pistol without a permit, and fined $100. His possession of the pistol on December 6 is the basis for Count II of the indictment. That count charged that

* The Honorable Robert A. Grant, Senior United States District Judge of the United States District Court for the Northern District of Indiana, sitting by designation.

Robbins " . . . having been convicted of felonies . . . did knowingly receive and possess in commerce and affecting commerce a firearm, that is, a Hopkins and Allen .38 caliber revolver. . . . "

On February 17, Robbins went to the Cascade District Court and asked for the return of his pistol. On the instructions of the judge of the court, the County Commissioner, who served as administrator of the court, handed the pistol to Robbins who signed a receipt for it. This occurrence is the basis for Count I of the indictment which charges that Robbins " . . . having previously been convicted of felonies . . . did knowingly receive a firearm, that is, a Hopkins and Allen .38 caliber revolver . . . which had been shipped or transported in interstate commerce . . in violation of Title 18, United States Code, Section 922(h)."

There is expert testimony that all Hopkins and Allen triple action revolvers were manufactured in the state of Connecticut.

## II.

### INTERSTATE COMMERCE.

■ Robbins claims that there was an insufficient "nexus" between his receipt or possession of the gun and interstate commerce.

18 U.S.C. Appendix § 1202(a), the basis for Count II, makes it an offense for a person who has been convicted of a felony to receive, possess, or transport "in commerce or affecting commerce, after the date of enactment of this Act [1968] any firearm." In this case, the evidence is that the pistol in question was manufactured in Connecticut and was possessed by Robbins in the state of Washington. The jury obviously could infer that the pistol must have travelled in interstate commerce. In *Scarborough v. United States,* 1977, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582, the Supreme Court squarely held that all that § 1202(a) requires is that the possessed firearm previously travelled in interstate commerce to satisfy the statutorily required nexus between the possession of a firearm

by a convicted felon and commerce. 431 U.S. at 564, 575, 97 S.Ct. 1963. Since the decision in *Scarborough,* our decisions in *United States v. Malone,* 9 Cir., 1976, 538 F.2d 250, 251, *United States v. Cassity,* 9 Cir., 1975, 509 F.2d 682, and *United States v. McShane,* 9 Cir., 1972, 462 F.2d 5, are no longer good law. Our decision in *United States v. Burns,* 9 Cir., 1975, 529 F.2d 114 at 118, conflicts with our decisions in *Malone, Cassity* and *McShane, supra,* but is in accord with the decision of the Supreme Court in *Scarborough* and is therefore still good law. In *Scarborough,* Mr. Justice Marshall notes in footnote 4, 431 U.S. at 567, 97 S.Ct. 1963, that there was an intra-circuit conflict in this circuit. That conflict was resolved in *Scarborough.* We conclude that there was a sufficient nexus with interstate commerce to support the conviction under Count II.

18 U.S.C. § 922(h) provides in part: "It shall be unlawful for any person . . . who has been convicted . . . of a crime punishable by imprisonment for a term exceeding one year . . . to receive any firearm . . . which has been shipped or transported in interstate or foreign commerce." In *Barrett v. United States,* 1976, 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 the Court squarely held that the case, which is like the present one, fell within the statute. The Court gave effect to the literal language that we have just quoted, "has been shipped or transported," holding that it does not matter how long the transportation in interstate or foreign commerce occurred before the defendant received the gun. *See* 423 U.S. at 216, 96 S.Ct. 498. Our own decisions are to the same effect. *United States v. Haddad,* 9 Cir., 1977, 558 F.2d 968, 972–73; *United States v. Mitchell,* 9 Cir., 1977, 557 F.2d 1290, 1292; *United States v. Lathan,* 9 Cir., 1976, 531 F.2d 955, which while it involved § 1202(a), *supra,* was a case in which the charge was receiving the firearm rather than possessing it; *United States v. Giannoni,* 9 Cir., 1973, 472 F.2d 136, another case in which, while the charge was under § 1202(a), it was one of receipt rather than possession.

## III.

### DID THE DEFENDANT "RECEIVE" THE GUN?

██ Robbins argues that he did not "receive" the gun within the meaning of § 922(h) because it was delivered to him by the Commissioner on February 18 only because the justice court judge had ordered that the gun be delivered to him rather than to one Beaudry, who, Robbins says, owned it. There was no order requiring that Robbins take the gun. The record shows that he obtained it and signed a receipt for it voluntarily, and that he referred to it as his gun. The seizure of the gun by the Arlington police and its subsequent delivery to Robbins did not, as he argues, "insulate" the gun from the interstate commerce nexus. Robbins' argument is without merit.

## IV.

### DOUBLE JEOPARDY.

██ Robbins argues that the two convictions, one for possession of the gun on December 6, 1976 (Count II), and the other for receiving the gun on February 18, 1977 (Count I), are essentially the same and that his conviction on both counts violates the constitutional provision against double jeopardy. The point is without merit. The possession of December 6 was terminated when Robbins was arrested. The receipt of it on the following February 18 was a new and separate offense requiring the proof of different facts.

## V.

### OTHER CLAIMED ERRORS.

██ Robbins argues that it was improper to permit an expert on guns to testify as to the place and time when the gun in question was made. The expert was obviously qualified, F.R.Ev. Rule 702. He testified that the company that made the gun was long since out of business, and that, based upon his reading on the subject, the company had had only one factory, in Connecticut, and that the particular model of the compa-ny's gun that Robbins possessed was first manufactured in 1907.

██ It was not error for the judge, at the request of the jury, to read to the jury certain testimony by the Arlington, Washington, Chief of Police as to what was said when Robbins was arrested on December 5, and testimony by Robbins himself on the same subject. The jury's request was specific and both the defendant's version and the Chief's version of what was said were read to the jury. Appellant points out that the evidence read was incomplete in that at another point in the transcript Robbins repeated, in slightly different words, the part of his testimony that was read. This is true, but if additional evidence had been read, it would have added nothing to what was read and its omission certainly did not hurt him. There was no abuse of the court's discretion. *See United States v. King,* 9 Cir., 1976, 552 F.2d 833, 850.

██ The government's final witness in rebuttal was an Arlington police officer who was present in the courtroom during a part of the testimony of the defendant. That presence was in violation of an order of the court excluding witnesses. However, the witness may not have known about the order because he was called to court by the prosecutor only shortly before he testified, and arrived after the defendant had given considerable testimony. In any event, the subject matter of his testimony concerned a minor element of the case and the court properly exercised its discretion to permit him to testify.

Affirmed.