902 F.2d 35
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kevin Thomas FORD, Defendant-Appellant.
 No. 89-3841.
 United States Court of Appeals, Sixth Circuit.
 April 30, 1990.
 
 Before RALPH B. GUY, Jr., and BOGGS, Circuit Judges; and AVERN COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Kevin Thomas Ford, appeals his conviction and sentence for three counts of receipt and possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. Sec. 922(g)(1). His sentence was enhanced pursuant to the penalty provisions of the Armed Career Criminal Act, 18 U.S.C. Sec. 924. One charge was brought upon retrial after a reversal by this court,[1] and the remaining two charges were brought by the government in a superseding indictment. The defendant brings five allegations of error: (1) the various counts of the indictments constituted a continuing offense, rendering it error to convict and sentence the defendant separately for each count; (2) the superseding indictment constituted prosecutorial vindictiveness; (3) the court erred in allowing the government to submit evidence of two prior convictions for violent felonies where the defendant offered to stipulate that he was a convicted felon; (4) it was improper for the judge to increase the defendant's sentence after his successful appeal; and (5) the conviction for count III should be reversed pursuant to Fed.R.Crim.P. 29 because the government did not prove possession of the gun on the date charged in the indictment. Finding that the various counts constituted a continuing offense, we remand this case to the district court for the vacation of one possession count and for resentencing.
 
 I.
 
 2
 On November 2, 1986, using the name "Andre J. Small," the defendant purchased a revolver from the Powder Room, a gun shop in Powell, Ohio. Ford used a driver's license in Small's name for identification, and he signed a statement on a firearms registration form denying that he had a felony conviction.
 
 
 3
 While he was driving his Pontiac Grand Am on August 10, 1987, Ford shot himself in the hand. His friend, Nathaniel Edwards, had been following him in Ford's Nissan, and they both pulled off the road. Edwards put Ford's gun in the trunk of the Nissan, and he and Ford drove to the police station in the Grand Am. Ford told the police that he had been shot by another motorist while driving, and he was taken to the hospital. His car remained at the station where it was impounded. An inventory search of Ford's car revealed an Ohio driver's license bearing Ford's picture but the name "Andre J. Small." Edwards recovered the Nissan several days later and drove it to his home. At the request of Ford, he brought the gun to Ford's home and gave the gun to Ford's wife, who gave it to Ford.
 
 
 4
 On September 28, 1987, Ford's wife, Cathy, reported to the police that Ford had a gun and was threatening to kill her. When they arrived at Ford's house, they did not find a gun on his person, but they did find one in the upstairs bathroom. Evidence at trial revealed that it was the same gun that had been purchased at the Powder Room on November 2, 1986.
 
 
 5
 In the first trial, the defendant was convicted of making a false statement in connection with the purchase of a firearm in violation of 18 U.S.C. Secs. 922(a)(6) and 924(a) (count I); of providing false identification in a transaction that affected interstate commerce in violation of 18 U.S.C. Sec. 1028(a)(1) and (c)(3) (count II); and of possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. Secs. 922(g)(1) and 924(e)(1) (count III). Ford was sentenced to 20 years without parole on count III and to concurrent five-year sentences on counts I and II, to run concurrently with the twenty-year sentence. On appeal, his conviction on the last count was reversed due to error in the judge's instructions to the jury as to what constituted "on or about September 28, 1987."
 
 
 6
 After the successful appeal and prior to the retrial on count III, the government returned a superseding indictment charging the defendant with receipt of a firearm after having been convicted of a felony; and possession of a firearm on or about August 10, 1987, after having been convicted of a felony. After a joint trial before a jury, the defendant was convicted on all three counts. At sentencing, the judge held that the defendant's conviction on count I merged with count II, and he vacated that conviction. He sentenced the defendant to 15 years without parole on each of the remaining counts, to be served consecutively.
 
 II.
 
 7
 Ford argues that his possession of the gun constituted a continuing offense and that he should be subject only to one conviction and sentence. In making this argument, he relies on United States v. Jones, 533 F.2d 1387 (6th Cir.1976), cert. denied, 431 U.S. 964 (1977), in which this court held that "[p]ossession is a course of conduct, not an act; by prohibiting possession Congress intended to punish as one offense all of the acts of dominion which demonstrate a continuing possessory interest in a firearm." Id. at 1391. Ford argues that his possession of the gun was uninterrupted between the date of purchase and the date of his arrest, on September 28, 1987.
 
 
 8
 Because Ford's possession of the gun was continuing between the date of purchase and August 10, 1987, the district court correctly merged these two counts for sentencing and vacated the conviction for receipt of the weapon. Responding to the defendant's motion to vacate his convictions on count II of the superseding indictment and count III of the original indictment, the district court held that the defendant's possession of the weapon was interrupted between August 10 and September 28, 1987. To support its conclusion, the court cited United States v. Robbins, 579 F.2d 1151 (9th Cir.1978), in which that court held that the defendant's possession of the firearm was interrupted when district court officials held the gun for over two months after the defendant's arrest for misdemeanor possession of a firearm without a permit. The district judge analogized Robbins to the instant case, holding that Ford's possession of the gun was interrupted while he was in the hospital.
 
 
 9
 We disagree. There are two types of possession: actual and constructive. As this court stated in United States v. Craven, 478 F.2d 1329 (6th Cir.), cert. denied, 414 U.S. 866 (1973):
 
 
 10
 Possession may be either actual or constructive and it need not be exclusive but may be joint. Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others....
 
 
 11
 Id. at 1333 (citations omitted). In Robbins, the defendant obviously relinquished control of his firearm when the court officials took it into their custody after his arrest. In this case, by contrast, Ford never relinquished his dominion and control over the gun. Even when the gun was no longer in Ford's physical possession, he controlled its whereabouts through Edwards. After Ford shot himself, the gun was put into the trunk of Ford's Nissan, according to Edwards. Ford, unlike Robbins, retained the ability to resume possession of the gun at his pleasure. Ford knew where the gun was the entire time he was in the hospital, and Edwards retrieved the gun and returned it to Ford just days after the shooting incident.
 
 
 12
 Because Ford's possession of the gun was continuous and uninterrupted, it constitutes a continuing offense within the meaning of Jones, and only one conviction may stand. We remand this case to the district court for the vacation of the September 28, 1987, possession conviction and for resentencing.
 
 III.
 
 13
 The defendant also argues that the superseding indictment should have been barred by the doctrine against vindictive prosecution. According to the defendant, to return the superseding indictment after his successful appeal and to charge the defendant with additional counts arising out of the same conduct as that involved in the first trial constitutes prosecutorial vindictiveness. As the Supreme Court has repeatedly emphasized, "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.' " United States v. Goodwin, 457 U.S. 368, 372 (1982) (quoting Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978)).
 
 
 14
 In cases in which additional or increased charges are brought following the exercise by a defendant of a constitutionally guaranteed right, such as the right to appeal, a presumption of vindictiveness is created. Blackledge v. Perry, 417 U.S. 21 (1974); Goodwin, 457 U.S. at 376. The government may overcome this presumption by objective evidence justifying the action of the prosecutor. According to the Supreme Court in Blackledge, the relevant inquiry is whether there is a "realistic likelihood of 'vindictiveness.' " Blackledge, 417 U.S. at 27. This court provided its own guidance for the proper application of the presumption of prosecutorial vindictiveness in United States v. Andrews, 633 F.2d 449 (6th Cir.1980), cert. denied, 450 U.S. 927 (1981):
 
 
 15
 In order to make this assessment, a court must weigh two factors. First, there is the prosecutor's "stake" in deterring the exercise of some right. In Blackledge the Court described the prosecutor's "stake" in deterring the appeals to a trial de novo as "considerable" since the prosecutor would have to try the case all over again.... Each situation will necessarily turn on its own facts.
 
 
 16
 Second, there is the prosecutor's conduct. A prosecutor who adds on extra charges after the exercise of a procedural right is arguably acting less vindictively than a prosecutor who substitutes a more severe charge for a less severe one....
 
 
 17
 By carefully analyzing the circumstances, the district court can make the determination whether there existed a realistic likelihood of vindictiveness. The standard itself, however, is an objective one--whether a reasonable person would think there existed a realistic likelihood of vindictiveness. The proper standard does not depend on a defendant's subjective impressions.
 
 
 18
 Id. at 454 (footnotes and citations omitted). Thus, our task is to make an objective evaluation of whether there existed a reasonable likelihood of vindictiveness.
 
 
 19
 At first glance, the circumstances of this case would appear to lead to the conclusion that the prosecutor acted vindictively in bringing the superseding indictment. The two counts of the new indictment involved the same conduct as was at issue in the first trial but exposed the defendant to potentially longer sentences. In the first trial, for example, the two fraud charges addressed to the defendant's conduct at the time of the purchase of the weapon. No new facts surrounding the purchase of the weapon were revealed after the first trial.
 
 
 20
 The superseding indictment also contained a count of possession of a weapon on or about August 10, 1987, when Ford shot himself in the hand. Again, the government had evidence to prove that Ford possessed the gun on this date, but no charge related to this date was brought in the original indictment.
 
 
 21
 Despite these considerations, however, an objective analysis of the government's actions reveals no realistic likelihood of vindictiveness. The government asserts that it brought the superseding indictment not to retaliate for the defendant's successful appeal, but to avoid the problems that led to the reversal of the conviction on count III. After the jury in the original trial retired to deliberate, it sent a question to the court requesting further instructions as to what constituted a date reasonably near the date charged in the indictment. The court gave an additional instruction that expanded the time frame for count III from November 2, 1986, through September 28, 1987. This court held that this supplemental instruction amounted to a constructive amendment of the indictment and was prejudicial per se.
 
 
 22
 Apparently, the jury's confusion in the first trial was due to uncertainty about the defendant's possession of the weapon on September 28, 1987, the date of the domestic incident. Certain members of the jury considered the proof of possession on August 10, 1987, to be stronger, and they wanted to base their conviction for possession on this date. To avoid this confusion upon retrial, the government brought the superseding indictment, which provided separate counts for receipt and possession on the date of purchase and on the date on which Ford shot himself.
 
 
 23
 The government's position is that it did not pursue a receipt count for November 2, 1986, in the original indictment because it considered the fraud charges to account for this conduct adequately. Such a statement would seem to support the defendant's argument of vindictiveness and not the government's position. However, because the conviction for receipt was vacated by the district judge, we need not decide the question of whether the bringing of this charge amounted to a constitutional violation.
 
 
 24
 A charge for possession on August 10 was not sought originally because, at the time of the indictment, the government did not think that its evidence was strong enough to prove possession on this date. At a suppression hearing a few days before the first trial, however, the government examined Nathaniel Edwards, Ford's friend. Although a hostile witness, Edwards' testimony revealed that in fact Ford did shoot himself in the hand and that they concocted the story about the passing motorist when they reported the incident to the police. Edwards had refused to cooperate with the government prior to this time, and he would not provide this testimony outside the courtroom. Because the date of the trial was fast approaching, the government decided not to amend the indictment to provide a separate charge for possession on August 10. However, after the reversal of the conviction, the government took the opportunity to bring a superseding indictment, confident now of its proof in light of Edwards' testimony.
 
 
 25
 The government considers the testimony of Edwards to be "newly discovered," therefore justifying the superseding indictment. Although the testimony of Edwards was not newly discovered in the technical sense, as it was known prior to the trial, the government was justified in relying upon this testimony to bring count II of the superseding indictment. Because the government was confident of its evidence of possession on September 28, and because Edwards' testimony was probative of Ford's ownership of the gun that was found in Ford's residence on this date, the government acted reasonably by not amending the indictment before the first trial. To avoid any uncertainty about the dates of possession in the second trial, however, the government brought the additional two charges. The newly discovered testimony of Edwards bolstered the government's case on count II of the new indictment, allowing the government to bring this charge with confidence. After the jury's apparent confusion about dates of possession in the first trial, it was certainly reasonable for the government to wish to clarify the dates of receipt and possession in separate counts to ensure a conviction.
 
 IV.
 
 26
 The defendant also objects to the introduction by the government of two prior felony convictions in its case-in-chief, despite the defendant's willingness to stipulate that he is a convicted felon. According to the defendant, the introduction of proof of two violent felonies is highly prejudicial and is unnecessary because Ford was willing to stipulate that he is a convicted felon.
 
 
 27
 This issue was also raised by the defendant in his prior appeal to this court, and we are bound by that court's decision. During the first trial, the government was permitted to introduce proof of six prior felony convictions in its case-in-chief. The panel in Ford held that the government was entitled to introduce proof of more than one violent felony conviction as predicate crimes for counts I and III of the original indictment. 872 F.2d at 1238. The court also noted that this court has held that the government was not limited to proving only one prior felony conviction under 18 U.S.C. Sec. 1202(a)(1), which was the predecessor to the current statute prohibiting possession of a firearm by a convicted felon. United States v. Burkhart, 545 F.2d 14, 15 (6th Cir.1976). Given the weight of authority in this circuit, the proof of two violent felony convictions does not constitute reversible error. If this court did not consider the potential prejudicial effect of proof of six prior felony convictions to warrant a reversal of Ford's first conviction, we cannot say that it was error to allow the introduction of two prior convictions.
 
 V.
 
 28
 Because of the manner in which we decide the first issue discussed above, we need not address the merits of the defendant's final two allegations of error. Ford alleges that the imposition of a more severe sentence upon retrial constituted judicial vindictiveness. Because we are remanding this case for resentencing, we need not examine the conduct of the district judge to determine whether his motives for imposing a higher sentence were improper. We do point out, however, that a judge may not impose a more severe sentence after retrial unless the reasons affirmatively appear in the record and are based on objective information concerning the defendant's conduct after the original sentencing. North Carolina v. Pearce, 395 U.S. 711 (1969).
 
 
 29
 Likewise, because we remand for vacation of the conviction for possession on or about September 28, 1987, we need not address the defendant's argument that the conviction on count III may not stand due to the failure of the government to introduce evidence that Ford was in possession of the gun on this date.
 
 
 30
 The defendant's conviction on count II of the superseding indictment is AFFIRMED, and this case is REMANDED for the vacation of count III of the original indictment and for resentencing.
 
 
 31
 AVERN COHN, District Judge, concurring.
 
 
 32
 I concur in the decision of the court. However, I write separately to note that I question the extent to which the government may introduce evidence as to the number or nature of the felonies supporting a charge of violating 18 U.S.C. Sec. 922(g)(1) in the face of an unambiguous willingness by a defendant to stipulate to his or her status as a convicted felon. Here, the record is simply not that clear as to the defendant's willingness to stipulate to such status.
 
 
 
 *
 Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 United States v. Ford, 872 F.2d 1231 (6th Cir.), petition for cert. filed, --- U.S.L.W. ---- (U.S. June 9, 1989) (No. 88-7446)