607 F.2d 917
 Kenneth W. DAVIS, Jr., Plaintiff-Appellant,
v.
Ernst ERDMANN, Port Director, (Port of Tulsa, Oklahoma)
Bureau of Customs, Department of the Treasury, and Rex D.
Davis, Director, Bureau of Alcohol, Tobacco and Firearms,
Department of the Treasury, Defendants-Appellees.
 No. 79-1382.
 United States Court of Appeals,
Tenth Circuit.
 Submitted Aug. 20, 1979.
Decided Oct. 15, 1979.
 
 Robert S. Travis and Ralph H. Duggins, III, of Cantey, Hanger, Gooch, Munn & Collins, Fort Worth, Tex., for plaintiff-appellant.
 Hubert H. Bryant, U. S. Atty., George Carrasquillo, Asst. U. S. Atty., Tulsa, Okl., and Ronald E. Williams, Washington, D. C., Bureau of Alcohol, Tobacco and Firearms, for defendants-appellees.
 Before PICKETT, McWILLIAMS and BARRETT, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 This action was brought to review the refusal of the Director of the Bureau of Alcohol, Tobacco and Tax, an agency of the United States Treasury Department, to grant the application of Kenneth W. Davis, Jr., for a permit to import from England a device or weapon described as a "knife-pistol." The complaint alleges that the device is a curio or museum piece, primarily a collector's item, and not likely to be used as a weapon. It is also alleged that Davis had fully complied with all of the statutes and regulations permitting the lawful importation of the device, and that the Director's action in denying the application was arbitrary, capricious, and an abuse of discretion. These allegations were denied. By agreement of the parties, the matter was tried by a court magistrate, without a jury, who found that the action of the Director was arbitrary, capricious, and an abuse of discretion. The magistrate recommended to the court that the relief prayed for be granted. The Director filed objections to the findings, alleging that his action was lawful and within his statutory authority. In sustaining the objections, the district court held that the "knife-pistol" was a weapon within the meaning of 26 U.S.C. § 5845, and that the Director's determination that the device was not primarily a collector's item and would likely be used as a weapon was not arbitrary, capricious, or an abuse of discretion. The disposition of these issues is to be determined by the provisions of the National Firearms Act, 26 U.S.C. § 5801, et seq., the Gun Control Act of 1968, 18 U.S.C. § 921, et seq., and a review of the evidence.
 
 
 2
 In 1968, the United States was confronted with a rapid increase in major crimes throughout the country, including those committed by the use of firearms, particularly hand guns. For the purpose of assisting state and local governments in reducing the incidence of crime and to strengthen federal control over interstate and foreign commerce in firearms, Congress enacted the Omnibus Crime Control and Safe Streets Act of 1968. The Act included amendments to the National Firearms Act and the enactment of the Gun Control Act of 1968. Each of these acts in somewhat different language recognized the interest of many citizens in antique and unusual firearms. Provision was made to exempt such firearms from the acts. 2 U.S.Code Cong. & Admin.News p. 2197, 3 U.S.Code Cong. & Admin.News p. 4410 (1968). The Gun Control Act (1968) specifically stated that it was not the purpose of the act "to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trap-shooting, target shooting, personal protection, or any other lawful activity . . . ." Section 101, P.L. 90-618, quoted following 18 U.S.C. § 921. The 1968 legislation was intended to control widespread traffic in firearms and their availability to those whose possession was contrary to the public interest. Barrett v. United States, 423 U.S. 212, 218, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976); Huddleston v. United States, 415 U.S. 814, 824, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974).
 
 
 3
 Section 5845 of the National Firearms Act defines firearms and includes this provision: "The term 'any other weapon' means any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive . . .." 26 U.S.C. § 5845(e); see also 18 U.S.C. § 921(a)(3). Section 5845(a) also provides:
 
 
 4
 . . . The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.
 
 
 5
 Section 5844 prohibits the importation of firearms except under conditions which do not exist here. 18 U.S.C. § 925(d)(2) authorizes the Secretary to permit the importation of a firearm "as a curio or museum piece."
 
 
 6
 Congress has delegated the administration of the National Firearms Act and the Gun Control Act of 1968 to the Department of the Treasury of the United States, which acts through the Bureau of Alcohol, Tobacco and Firearms. The scope of court review of Bureau decisions is a narrow one. Generally, it is limited to determining whether the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Although, under the statutory standard, the court cannot substitute its judgment for that of the agency, it should make a searching and careful inquiry to determine if the agency decision is based on a consideration of all relevant facts and is not a clear error in judgment. Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 195 S.Ct. 438, 42 L.Ed.2d 447 (1974);[1] Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); National Beef Packing Company v. Secretary of Agriculture and United States of America, 605 F.2d 1167 (10th Cir.), filed September 13, 1979; Sabin v. Butz, 515 F.2d 1061 (10th Cir. 1975).
 
 
 7
 Davis concedes that the knife-pistol was designed as a weapon and was within the "any other weapon" provision of Section 5845(e), but contends that it is primarily a collector's item not likely to be used as a weapon, and therefore not included in the Section 5845(a) definition of a firearm. Throughout the trial the Director admitted that the device is primarily a collector's item and a curio relic, but urged, as he does here, that it is not excluded from the provisions of the National Firearms Act because it is likely to be used as a weapon. Under this state of the record, there remains only the narrow question of whether there is any basis for the Director's finding that this particular knife-pistol is likely to be used as a weapon.
 
 
 8
 A review of the evidence discloses that Davis, a business executive and resident of Tulsa, Oklahoma, was a licensed dealer and collector of unique, odd or curiosity-type firearms. He was not engaged in the business of buying and selling such firearms, but collected them for his own satisfaction and the entertainment of others. He does not hunt and has not discharged a firearm since World War II. In 1973, his offer to purchase a "knife-pistol" for sale in England was accepted. This device is generally recognized as an odd and curious weapon. After payment of the purchase price of approximately $200.00, the device was shipped to Davis in Tulsa and received at the United States Customs House there. His application for a permit to import the article was denied by representatives of the Bureau of Alcohol, Tax and Firearms for numerous irrelevant reasons and because it was found to be a weapon within the meaning of Section 5845(e) and likely to be used as such. There followed a long period of negotiations and proposals by Davis, one of which was to make the device unserviceable, but the Bureau stood firm. Davis was as sure of his position as was the Bureau, so, six years later, the case is here.
 
 
 9
 The knife-pistol in question was manufactured in 1917 by the U. S. Small Arms Company of Chicago, Illinois, and a small and undisclosed number were marketed. There was some indication in the record that the principal operations of the manufacturer were in New York, and that the corporation was dissolved in 1921. The device has the appearance of an ordinary pocket knife less than four inches in length. It is so constructed that a small steel tube approximately one-and-a-quarter inches in length fits into the handle, with one end pointing outward from the end of the knife. The construction is such that the inner end of the tube or barrel can be sufficiently elevated to permit the insertion of a .22 short caliber cartridge. The tube may then be returned to the knife handle in which there is some sort of breach block and a firing pin mechanism. The knife is equipped with a small lever which, after being elevated and squeezed shut, will activate the firing pin with sufficient force to detonate the cartridge.
 
 
 10
 The evidence is undisputed that this particular type of knife-pistol was known to leading collectors, museum officials and other knowledgeable persons, as rare and unique, and primarily a collector's item. There was no evidence that a knife-pistol of this make was in the possession of anyone except collectors and museums, including the Smithsonian Institute.[2] There was no evidence that such a device had been used in the commission of a crime. Experts testifying on behalf of the Director admitted that they knew of no instance where a knife-pistol had been used as a weapon. Officials of the New York City and Los Angeles police departments testified that they knew of no instance where such a device had been used in the commission of crimes. Such weapons were considered by them to be impractical for use in the commission of crimes in view of the availability of conventional and concealable small arms at low cost. Although Bureau experts were of the opinion that the knife-pistol would be used in the commission of a crime, there was a total lack of evidence to support this view, and they knew of no instance where one had been so used. No witness testified that he had undertaken to fire one of them. No claim was made, and there is not a scintilla of evidence, that this particular weapon in the possession of Davis would likely be used as a weapon. The evidence is to the contrary. Previously, the Bureau had allowed Davis to import a Nazi-German army belt buckle of much later manufacture in which was concealed a small barrel, similar to that of the knife-pistol, capable of detonating a cartridge. The issue is not whether the knife-pistol could be used as a weapon, but whether it is "primarily a collector's item and not likely to be used as a weapon," or is "a curio or museum piece." The knife-pistol is within either definition.
 
 
 11
 From this record and the law, it is difficult to understand the unrelenting opposition of agents of the Bureau, including the Director, to the granting of this permit to import a so-called weapon which for all practical purposes was a useless gadget. Over the long period of controversy, agents of the Bureau gave many reasons for the refusal, most of which were irrelevant to the issue. The Director's office later admitted in writing that some of those reasons were false or without factual basis. Denial of the permit appears to be a classic example of agency "nitpicking," and an arbitrary and capricious action.
 
 
 12
 The judgment is reversed and the case remanded with instructions to enter judgment requiring the issuance of the necessary permit to require immediate delivery of the "knife-pistol" to Plaintiff-Appellant Davis.
 
 
 
 [1]
 In Bowman, the Court said, 419 U.S. at 285, 286, 95 S.Ct. at 442:
 Under the "arbitrary and capricious" standard the scope of review is a narrow one. A reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park v. Volpe, supra, (401 U.S.) at 416, (91 S.Ct. 814). The agency must articulate a "rational connection between the facts found and the choice made." Burlington Truck Lines v. United States, 371 U.S. 156, 168, (83 S.Ct. 239, 9 L.Ed.2d 207) (1962). While we may not supply a reasoned basis for the agency's action that the agency itself has not given, SEC v. Chenery Corp., 332 U.S. 194, 196 (, 67 S.Ct. 1575, 91 L.Ed. 1995) (1947), we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned. Colorado Interstate Gas Co. v. FPC, 324 U.S. 581, 595 (, 65 S.Ct. 829, 89 L.Ed. 1206) (1945). . . .
 
 
 [2]
 An agent of the A.T.F. testified that there were three in the Bureau's gun library, but it was not shown when or from whom they were acquired