**Michael C. THOMPSON, Petitioner,**

v.

**The DEPARTMENT OF THE TREASURY, BUREAU OF ALCOHOL, TOBACCO AND FIREARMS, Respondent.**

**No. C 81–0095.**

United States District Court,
D. Utah, C. D.

Dec. 4, 1981.

Francis M. Wikstrom, U. S. Atty., Barbara W. Johnsen, Asst. U. S. Atty., Salt Lake City, Utah, for respondent.

## ORDER

ALDON J. ANDERSON, Chief Judge.

### BACKGROUND

In this action the petitioner seeks judicial review of a decision by the Secretary of the Bureau of Alcohol, Tobacco and Firearms (ATF)[1] denying petitioner relief from federal firearms disabilities. In 1968, petitioner pleaded guilty to charges of fraudulent use of credit cards and obtaining merchandise by false pretenses. As a result of his conviction, he was placed under certain firearms disabilities, under the Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.*[2] Since 1968, petitioner has not been convicted nor arrested for any criminal offense. He now owns a company that employs many security guards, some of whom carry firearms. Petitioner asserts that it is essential to his business that he, too, be permitted to carry firearms, so that he can train his employees, and because he is often called upon to render "executive protection services" for his clients, which requires his personal use of firearms.

To have his firearms disabilities removed, petitioner petitioned the Secretary of ATF for relief, under 18 U.S.C. § 925(c). That section provides, in relevant part, as follows:

> A person who has been convicted of a crime punishable by imprisonment for a term exceeding one year (other than a crime involving the use of a firearm or other weapon or a violation of this chapter or of the National Firearms Act) may make application to the Secretary for re-

Robert B. Sykes, Salt Lake City, Utah, for petitioner.

1. The Bureau of Alcohol, Tobacco and Firearms is a division of the Department of the Treasury.

2. Under 18 U.S.C. §§ 922(g) and (h), it is unlawful for a person "who ... has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to ship interstate or receive firearms or ammunition that have been shipped in interstate commerce. Under § 922(d), it is unlawful for a licensed importer, manufacturer, dealer, or collector, to sell any firearm or ammunition to such a person.

lief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, or possession of firearms and incurred by reason of such conviction, and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the conviction, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.

In response to his application, petitioner received a short letter denying relief, because the Secretary was "not presently satisfied that the . . . statutory requirements for granting relief ha(d) been met." Petitioner seeks review of that decision before this court, contending that the Secretary's decision was arbitrary, capricious, and an abuse of discretion. The Government responds that under § 925(c) the Secretary has broad discretion to grant or deny applications to remove firearms disabilities, and that this discretion was properly exercised here.

The Government has now moved for summary judgment affirming the Secretary's decision. In support of its motion, the Government offers the affidavit of James W. Elder, Chief of the Investigations Division of ATF. The Chief of Investigations has been delegated the authority that the Secretary has under § 925(c) to review applications for relief from firearms disabilities.[3] Mr. Elder's affidavit states that after an investigation was completed by ATF Special Agent Robert Swehla, Mr. Elder denied petitioner's application because of petitioner's violation of federal firearms laws, his falsification of Treasury Department forms in acquiring firearms, and his reputation for being hot-headed and quick tempered.

Petitioner opposes summary judgment on two grounds. First, he argues that the court's judicial review must take into account the full administrative record that was before the decision maker when the decision was made. Therefore judicial review to determine whether the agency action was arbitrary and capricious cannot, he argues, be based solely on the affidavit containing the findings of Mr. Elder. Second, he claims the decision was arbitrary and capricious and thus should be reversed on its merits. For reasons set out below, the court agrees with petitioner that it cannot properly perform its review function based on the record now before it. Consequently, it is unable at this time to determine whether the Secretary's decision was arbitrary and capricious.

## ANALYSIS

The Gun Control Act of 1968 does not specify the proper standard for review of a decision by the Secretary under § 925(c). Therefore the court must look to the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, for the controlling standard. Under the A.P.A., different standards of review may be applied to an adjudication by an agency, depending on the type of adjudication involved. For a "formal" adjudication, one that is made after a public hearing, the agency action will not be disturbed if it is supported by "substantial evidence." 5 U.S.C. § 706(2)(E). For "informal" adjudications, those requiring no hearing, a more relaxed standard of review under § 706(2)(A) is applicable. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413–16, 91 S.Ct. 814, 822–23, 28 L.Ed.2d 136 (1971); *CF & I Steel Corporation v. Economic Development Administration*, 624 F.2d 136, 139 (10th Cir. 1980).

The adjudication at issue here required no hearing and therefore must be reviewed under § 706(2)(A). That section provides:

> The reviewing court shall—
>
> (2) Hold unlawful and set aside agency action, findings, and conclusions found to be—

---

**3.** Under 27 C.F.R. § 178.144(c), authority to pass on applications under § 925(c) has been delegated to the Director of ATF. This authority has in turn been delegated to the Chief of the Investigations Division. Affidavit of James W. Elder, paragraph 4.

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .

The section further states:

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

Petitioner claims that it is improper for the court to make any review of the agency action at issue here until it has before it the full administrative record that was before the decision maker when the decision to deny his application was made. In support of this argument, petitioner relies on the language of § 706 of the A.P.A., which provides that in applying the "arbitrary and capricious" standard of review of § 706(2)(A), "the court *shall review the whole record*." (Emphasis added.) Although this statute seems to provide clear support for petitioner's position, the courts have not consistently required that the full administrative record be examined before informal adjudications are reviewed under the "arbitrary and capricious" standard.

After the U. S. Supreme Court's decision in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the applicable law appeared to be clear. In *Overton Park*, the Court reviewed, under § 706(2)(A), an informal adjudication of the Secretary of Transportation to build a highway through a public park. The Court, guided by § 706's language that judicial review must be done in light of the "whole record," stated that the reviewing court must engage in a "substantial inquiry, . . . a thorough, probing indepth review." 401 U.S. at 415, 91 S.Ct. at 823. Further, the Court held: "That review is to be based on the full administrative record that was before the Secretary at the time he made his decision." 401 U.S. at 420, 91 S.Ct. at 825.

The seemingly unambiguous precedent of *Overton Park* was later clouded by the Court's decision in *Dunlop v. Bachowski*,

421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975). In *Bachowski*, a defeated candidate for a union office sought judicial review of the Secretary of Labor's decision not to institute a civil action to test the validity of the election in which plaintiff was defeated, under the National Labor Management Reporting and Disclosure Act, 29 U.S.C. § 482. Though the agency decision in *Bachowski* was an informal adjudication, just as in *Overton Park*, and thus subject to the same review standard under § 706 of the A.P.A., the Court in *Bachowski*, without any reference to *Overton Park*, declined to require a full administrative record on which to perform its review function. In *Bachowski*, the Court held that judicial review could be performed on the basis of the decision maker's findings only—it was unnecessary for the reviewing court here to have the "whole record" before it, as required by § 706 and *Overton Park*.

The reason offered by the Court for permitting a more limited scope of review in this situation than in *Overton Park* was that Congress had vested extremely broad authority in the Secretary of Labor to decide whether to bring suits to contest the validity of union elections. Thus, while the Court rejected the argument that judicial review was *precluded* under § 701 of the A.P.A.,[4] it found that Congress, in granting this authority to the Secretary, had expressed its intent to narrowly limit the scope of judicial review of his action. 421 U.S. at 568, 95 S.Ct. at 1858. Consequently, a statement of findings is all that was necessary to perform the review function.

Though the Court in *Bachowski* states that § 706(2)(A), the "arbitrary and capricious" standard, is the appropriate standard of review, 421 U.S. at 565, 95 S.Ct. at 1857, it offers no explanation why the succeeding language of § 706 requiring that review be based on the "whole record" is not followed. The decision is troublesome because though there are now two separate rules for judicial review of informal adjudications, the Court has offered little guidance to permit

---

**4.** According to 5 U.S.C. § 701, judicial review is not available when "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."

a reviewing court to determine which rule should be applied in a given situation. Section 706 and *Overton Park* set the general standard, under which review must be made of the whole record, but if Congress somehow reveals clearly enough its intent to narrowly limit judicial review of agency action under a particular grant of authority, there is an apparent exemption from the "whole record" requirement, and review of the decision-maker's findings is sufficient.

Only one court of appeals has decided what materials must be before the district court before it may judicially review a decision by the Secretary of ATF denying an application to remove firearms disabilities under § 925(c). In *Kitchens v. Department of the Treasury*, 535 F.2d 1197 (9th Cir. 1976), the Ninth Circuit, following *Bachowski*, held that "the scope of judicial review should be limited to an examination of the statement of the reasons upon which the Director made his decision to deny relief." 535 F.2d at 1199–1200. Its decision to so limit the scope of judicial review was based on its finding that "the statute, by its terms, confers upon the [director] broad discretion to grant relief for disabilities imposed under the Gun Control Act." 535 F.2d at 1199. This decision has been followed by one federal district court. *McConnell v. Department of the Treasury*, No. C–77–348–A. (N.D.Ga. Oct. 27, 1977).

The Tenth Circuit has never ruled on the proper scope of review of a decision by the Secretary of ATF under § 925(c) of the Gun Control Act. It has, however, recently addressed the appropriate scope of review of agency action under § 925(d) of the same statute. In *Davis v. Erdmann*, 607 F.2d 917 (10th Cir. 1979), plaintiff, a collector and dealer of unique firearms, sought judicial review of the Secretary's decision denying his request to import a "knife-pistol," a rare collector's item, to this country from England. Section 5844 of the National Firearms Act, 26 U.S.C. § 5801 *et seq.*, generally prohibits the importation of firearms. However, § 925(d)(2) of the Gun Control Act permits a party to apply to the Secretary for permission to import a weapon. The Secretary may approve that it be brought into this country if he is satisfied that it is being "brought in as a curio or museum piece." Exercising the authority delegated him under this statute, the Secretary denied plaintiff's application because he felt that the "knife-pistol" was likely to be used as a weapon.

The Tenth Circuit found that *Overton Park* set the proper scope for its review of the Secretary's denial under § 925(d)(2). 607 F.2d at 918–19. The Court stated that it must "make a searching and careful inquiry to determine if the agency decision is based on a consideration of all relevant facts and is not a clear error in judgment." *Id.* at 918. Applying this standard of review, the Court found the Secretary's decision to be a "classic example of agency 'nitpicking'" and remanded the case with instructions to require the Secretary to issue the permit. *Id.* at 920.

■ The Tenth Circuit here expressly invoked the broad scope of review required by *Overton Park*, finding that its review must be a "searching and careful inquiry." Though the decision came four years after *Dunlop v. Bachowski*, the Court makes no suggestion that the narrower scope of review applied there was appropriate. This court can see no basis in the relevant statutory language for concluding that Congress intended the scope of review of the Secretary's decisions under § 925(c) to be any narrower than his decisions under § 925(d). Therefore, this court must follow the Tenth Circuit's decision in *Davis v. Erdmann*. Judicial review of the Secretary's decision requires consideration of the entire administrative record.

Even if this court were not bound by *Erdmann*, however, it would still reach the same result, because the considerations impelling the *Bachowski* court to permit review solely on the basis of findings are not present here. Congress has expressed its intent in § 706 of the A.P.A. that judicial review of informal adjudications should be made upon consideration of the "whole record." The Supreme Court recognized this in *Overton Park* when it held that a district

court, in reviewing an informal adjudication, must consider the "full administrative record." 401 U.S. at 420, 91 S.Ct. at 825. Though this statutory requirement, and the *Overton Park* rule, are not followed in *Bachowski*, this departure is based on the Supreme Court's view of the statute there as intended "narrowly to limit the scope of judicial review." 421 U.S. at 568, 95 S.Ct. at 1858. The Court in *Bachowski* sets out in detail the reasons for the narrow limitation it placed on the scope of review. 421 U.S. at 568–72, 95 S.Ct. at 1858–60. It found that Congress' concern, in granting exclusive authority to the Secretary of Labor to decide whether to challenge the validity of a union election, was "to settle as quickly as practicable the cloud on the incumbents' titles to office." 421 U.S. at 569, 95 S.Ct. at 1858. By "deliberately [giving] exclusive enforcement to the Secretary (Congress) emphatically asserted a vital public interest in assuring free democratic union elections that transcends the narrower interest of the complaining union member." *Id.*

■ In line with the strong legislative intent perceived by the Court, it held that Congress intended to narrowly limit the scope of review. In effect the Court found that the *implied* intent of Congress to limit judicial review of the Secretary of Labor's decision under this statute supercedes its *express* intent in § 706 of the A.P.A. that review should be based upon the "whole record." Chief Justice Burger, in a concurring opinion in *Bachowski*, recognizes this when he notes: "The language and purposes of (the statute) have required the Court to define a scope of review much narrower than applies under 5 U.S.C. § 706(2)(A) in most other administrative areas." 421 U.S. at 590, 95 S.Ct. at 1868. A finding of an implied intention to narrowly limit the scope of judicial review is, of course, in reality a judicial creation that operates to defeat Congress' express intent in § 706. Because such a judicial determination frustrates Congress' express intent, the courts should find such an intention only when it is abundantly clear that it is in fact present.

The Supreme Court in *Bachowski* approved a narrow scope of review only after articulating at length the special circumstances requiring it. The Ninth Circuit, in its *per curiam Kitchens* opinion, likewise approved judicial review of findings only under § 925(c), but with only cursory reference to the "broad discretion" Congress had vested in the Secretary to grant or deny relief under § 925(c). 535 F.2d at 1199. The Court offered no explanation why the "whole record" requirement of § 706 of the A.P.A. was not followed.

In this court's view, the legislative intent that was so easily found by the Ninth Circuit simply is not present in the statute at issue here. Under § 925(c), the Secretary of ATF has authority to pass on applications such as petitioner's, and Congress has expressly stated standards to guide the Secretary in deciding whether to grant relief. True, the statute does give the Secretary wide discretion, but this court sees no indication in its language that Congress intended to subject the Secretary's decisions under it to any narrower scope of review than all other agency actions it has expressly declared must be reviewed under § 706 of the A.P.A. This court declines to infer such an intent absent some compelling reason for doing so.

The court's research reveals that the Tenth Circuit, though it has had several opportunities since *Bachowski* to do so in other administrative areas, has never yet seen fit to apply the limited scope of review permitted there. Rather, it has consistently followed *Overton Park*'s requirement that a court reviewing an agency's informal adjudication engage in a "substantial inquiry and a probing in-depth review." *CF&I Steel Corporation v. Economic Development Administration*, 624 F.2d 136, 139 (10th Cir. 1980); *Edwards v. Califano*, 619 F.2d 865, 868 (10th Cir. 1980); *Davis v. Erdmann*, 607 F.2d 917, 918 (10th Cir. 1979); *Coleman v. Darden*, 595 F.2d 533, 539 (10th Cir. 1979); *Sabin v. Berglund*, 585 F.2d 955, 959 (10th Cir. 1979).

96

■ Finally, the court notes that though the Supreme Court in *Bachowski* required the Secretary of Labor to make findings in connection with the informal adjudication there, this requirement is a judicial creation that is not imposed by the Administrative Procedure Act. Under the A.P.A., findings are only required for formal adjudications. Under 5 U.S.C. § 557(c), a formal adjudication must be accompanied by

a statement of—

> (A) findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.

For informal adjudications the only requirement is that the agency give an interested party a "brief statement of the grounds for denial." 5 U.S.C. § 555(e).

Though the federal courts have in certain circumstances judicially imposed a requirement that an agency make findings to support its informal adjudications, the general rule has been, at least until *Bachowski*, that findings are not required. *Camp v. Pitts*, 411 U.S. 138, 142–3, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 417, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). *See generally* K. C. Davis, Administrative Law of the Seventies, Supplementing Administrative Law Treaties, § 16.00 at 378 (1976). Occasionally, however, the Supreme Court, as well as the lower federal courts, though not with any apparent consistency,[5] have required the agency making an informal adjudication to make findings supporting

its decision. Several reasons have been advanced for doing so,[6] but the primary one is that a statement of findings helps to inform a reviewing court of the rationale behind an agency's decision, and thus facilitates the process of judicial review. *See* K. C. Davis, 2 Administrative Law Treatise § 16.05 at 444 (1958). The Supreme Court in *Bachowski* indicated that the chief reason for its requirement of findings there was "to enable the reviewing court intelligently to review the Secretary's determination." 421 U.S. at 571, 95 S.Ct. at 1859. Professor Kenneth Culp Davis, who has long advocated a requirement of findings in connection with informal agency action, has welcomed the seemingly broad holding in *Bachowski* requiring agencies to make findings. Professor Davis has stated:

> Altogether, the *Bachowski* opinion fully supports this generalized statement: When neither the statute nor its legislative history says anything about judicial review or a requirement of findings and reasons but the reviewing court applies the presumption of reviewability, informal administrative action must be supported by a statement of findings and reasons. The Supreme Court could, and it probably should, apply that generalized proposition to any informal action that fits the requirement.

K. C. Davis, Administrative Law of the Seventies, Supplementing Administrative Law Treatise (1980 Supplement) § 16.00–9 at 100 (1976).

**5.** Professor Kenneth Culp Davis has been highly critical of the lack of consistency in this area of the law: "The courts, including especially the Supreme Court, have produced capricious law on the question whether or when findings and reasons are judicially required with respect to informal administrative action, that is, action that is taken without the safeguards of formal hearings. In hardly any other area is judge-made administrative law so unsatisfactory. The capricious results stem mostly but not altogether from the Supreme Court." K. C. Davis, Administrative Law of the Seventies, Supplementing Administrative Law Treatise, § 16.00 at 377 (1976).

**6.** The District of Columbia Court of Appeals has recently summarized the reasons for requiring findings as follows: "The fundamental principle of reasoned explanation ... serves at least three inter-related purposes: enabling the court to give proper review to the administrative determination; helping to keep the administrative agency within proper authority and discretion, as well as helping to avoid and prevent arbitrary, discriminatory, and irrational action by the agency; and informing the aggrieved person of the grounds of the administrative action so that he can plan his course of action (including the seeking of judicial review). *Matlovich v. Secretary of the Air Force*, 591 F.2d 852, 857 (D.C.Cir.1978).

*Bachowski*, by imposing such a broad rule, may indeed be a seminal decision.[7] It is a curious opinion, however, because while it imposes by judicial fiat a findings requirement that is *not* required by the A.P.A., it states at the same time that judicial review may be performed without looking at the "whole record," a requirement that *is* imposed by the A.P.A. Thus, the benefit of improved judicial review that presumably is gained by requiring findings would seem to be lost under *Bachowski*, because a reviewing court no longer has the benefit of the record the findings are based on. The effect of *Bachowski*, even though it requires findings, is to require a narrowed if not superficial, not a more meaningful scope of review, because it dispenses with the requirement of a record to review. Although this is the form of review required by *Bachowski*, this court respectfully does not perceive how truly meaningful review can be undertaken at all without looking at the information that forms the basis for an agency's decision.

■ The essence of judicial review of administrative action is scrutiny of the reasoning process of the decision maker. In applying the "arbitrary and capricious" standard of § 706(2)(A), therefore, the reviewing court must examine the record that was before the agency and decide whether, in light of that record, the findings and decision reached were reasonable. If the court has before it only a decision maker's findings and ultimate decision, but not the raw data forming the basis for these conclusions, how can it possibly ascertain whether the findings and decision are the product of a rational process? The findings may well be internally consistent, and therefore acceptable on their surface. However, without the benefit of the record they are based on, it is logically impossible to determine whether the findings are reasonable, on the one hand, or merely the product of arbitrary selection from the record to support the agency's decision, or worse, completely unsupported by the record. It is evident to the court that Congress' purpose, in requiring review of informal agency action to be upon the "whole record," was to ensure that the review would constitute a meaningful evaluation of the agency's decision. This court therefore concludes that in order to determine whether the Secretary's decision was "arbitrary and capricious" it must have before it the full administrative record that was before the Secretary at the time his decision was made.

There is also pending before the court a motion by the Secretary to "quash" discovery sought by petitioner. Petitioner has sought from the Secretary answers to certain interrogatories and also documents which would in effect constitute the "full administrative record." The Secretary has resisted discovery, arguing that because judicial review should be limited to the Secretary's findings, these findings are all the discovery that petitioner is entitled to.

■ Counsel have not cited, nor is the court aware of, any authority permitting discovery in a proceeding to review the decision of an administrative agency. Judicial review of agency action in the district court is in the nature of an appellate proceeding, for which the usual broad scope of discovery permitted under the Federal Rules is not available. However, in order to permit this court to perform its review function, it will be necessary for the Secretary to deliver to the court the administrative record that was before him when the decision to deny petitioner's application was made. *See Smith v. Federal Trade Com-*

---

7. Apparently, however, the Supreme Court has not intended *Bachowski* to state a general requirement for all informal adjudications. Only a year after it was decided, the Court passed on the issue whether findings were required in an informal adjudication to impose penalties on a mine operator under the Federal Mine Health and Safety Act. *National Independent Coal Operators' Association v. Kleppe*, 423 U.S. 388, 96 S.Ct. 809, 46 L.Ed.2d 580 (1976). Though this was a case where, like *Bachowski*, the Court could have required findings, it declined to do so because it felt such a requirement would obstruct the "(e)ffective enforcement of the Act." 423 U.S. at 399, 96 S.Ct. at 815. The ultimate reach of *Bachowski* has yet to be decided.

98

*mission*, 403 F.Supp. 1000, 1008–9 (D.Del. 1975). After the administrative record is filed with the court, it will of course be available for review by petitioner and his counsel.

 A final issue that may require the parties' attention concerns the delegation of decision-making authority involved in this case. The adjudication at issue here was made by ATF's Chief of Investigations, whose authority was delegated from the Director of ATF, *see* n. 3 *infra.*, who in turn received his authority from the Secretary pursuant to 27 C.F.R. § 178.144(c). Thus, the authority that was originally delegated by Congress to the Secretary has twice been sub-delegated. While a certain amount of sub-delegation is permissible, indeed necessary, to the operation of a large agency, *see Earnest v. Moseley*, 426 F.2d 466 (10th Cir. 1970), the courts have long recognized that, absent specific Congressional authorization, the sub-delegation of administrative power that Congress has vested in a particular body or officer must be limited. *See Cudahy Packing Co. of Louisiana v. Holland*, 315 U.S. 357, 62 S.Ct. 651, 86 L.Ed. 895 (1942). This issue has not been addressed by counsel, but the court believes that a substantial question may be present here. Therefore, the court requests the parties, if they perceive any infirmity in these proceedings created by the delegation of authority to the Chief of Investigations, to take appropriate action to bring the issue before the court.

Accordingly,

IT IS HEREBY ORDERED that the Secretary's motion for summary judgment is denied.

IT IS FURTHER ORDERED that the Secretary's motion to quash discovery is granted.

IT IS FURTHER ORDERED that the Secretary promptly certify to this court the full administrative record that was before him when he made his decision to deny petitioner's application for relief from firearms disabilities. After the administrative record has been filed with the court, the clerk is directed to schedule a conference between the court and counsel, to discuss the need for any additional briefing before the court reviews the Secretary's decision.