849 F.2d 607
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Edward GORDON, Defendant-Appellant.
 No. 87-5667.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 6, 1988.
Decided: June 7, 1988.
 
 Garold Walter Morris, II (Morris & Morris, on brief), for appellant.
 Beth Heier Lurz, Assistant United States Attorney (William A. Kolibash, United States Attorney; Lisa Grimes, Legal Intern, on brief), for appellee.
 Before CHAPMAN and WILKINSON, Circuit Judges, and EUGENE A. GORDON, Senior District Judge from the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Appellant, a thrice convicted felon, was indicted and convicted in the United States District Court for the Northern District of West Virginia on charges of receipt of a firearm in violation of 18 U.S.C. Sec. 922(h) and Sec. 924(a) (1982), of making a false statement to acquire a firearm in violation of 18 U.S.C. Sec. 922(a)(6) and Sec. 924(a) (1982), and of possession of a firearm by a convicted felon in violation of 18 U.S.C.App. 1202(a)(1) (1982). He challenges these convictions claiming a willful and deliberate delay by the government denying him a speedy trial. He also claims duplicitous convictions as to the receipt of the firearm and the possession of the firearm (Counts Two and Four of the Indictment) asserting that such counts are supported by the same facts. Finding no error, we affirm.
 
 
 2
 * In August 1986, an eighteen-year-old resident of Ohio attempted to pawn a .22 caliber Colt pistol, but he was advised that he was too young. He then approached the appellant and asked him to pawn the firearm. The appellant and the young man then traveled to the Outdoor Store in Wheeling, West Virginia, where the appellant took the pistol into the store and pawned it, receiving $40.00 and a pawn ticket, which he delivered to the young owner.
 
 
 3
 Several weeks later, the appellant asked the young man if he intended to reclaim the firearm, and was advised that he did not have the necessary money. Appellant then bought the pawn ticket for an undetermined amount of money. The appellant returned to the Outdoor Store on September 3, 1986 and redeemed the Colt pistol. In connection with this transaction he completed and signed a ATF Form 4473, and after the payment of the sum of $44.00, the pistol was delivered to him. There was testimony that appellant still had the pistol in the latter part of September 1986.
 
 
 4
 On ATF Form 4473 the appellant falsely answered certain questions under oath, particularly his denial that he was a convicted felon.
 
 
 5
 On October 17, 1986 appellant was indicted for four violations of the federal gun laws, and at his arraignment, his attorney requested the court to transfer appellant to a medical facility for treatment of his numerous physical ailments. The court ordered the appellant to be sent to an appropriate medical facility in a federal correctional institution for treatment. The appellant consented to this action, and it is not disputed that he needed extensive medical treatment before he would be in condition to stand trial.
 
 
 6
 The appellant was transported to the U.S. Medical Center for Federal Prisoners in Springfield, Missouri. He was returned to the Northern District of West Virginia pursuant to an order of the district court entered July 9, 1987, and he was certified to be physically able to stand trial on July 24, 1987. This information was furnished to the trial court on August 28, 1987. His trial commenced on September 25, 1987 and he was convicted on three counts mentioned above.
 
 II
 
 7
 The Speedy Trial Act, 18 U.S.C. Sec. 3161, et seq. (1982), provides that certain periods of time are automatically excluded when computing the various time limits in the Act. Section 3161(h)(1)(A) excludes a delay resulting from any proceeding, including any examinations to determine the mental capacity or physical capacity of the defendant, and Sec. 3161(h)(4) excludes any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial. There is no question that the appellant needed extensive treatment and hospitalization to treat his urological symptoms, his paraplegia, extensive ulcerations of his leg and a grand mal seizure. His complaint is that the procedures took too long and thereby violated his rights under the Speedy Trial Act and under the Sixth Amendment to the Constitution.
 
 
 8
 The record discloses that immediately after being advised by the examining physician that the appellant was able to physically stand trial, the case was promptly called for trial. We find the time to be excludable and there is no violation of the Speedy Trial Act.
 
 
 9
 The Sixth Amendment guarantees a defendant the right to a speedy criminal trial, but the Supreme Court has not established a bright line test or definite time requirements. In Barker v. Wingo, 407 U.S. 514 (1972), the Court set forth four factors to be considered in determining whether there has been a violation of the right to a speedy trial. These are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant resulting from the delay. 407 U.S. at 530.
 
 
 10
 In the present case there is no question about the reason for the delay. At the time of arraignment the appellant was in desperate need of medical attention and he consented to being confined and transferred to a medical facility within the correctional system. Promptly after the appellant asserted his right to a speedy trial, he was transferred back to the Northern District of West Virginia, and after the court received the physician's certificate that he was physically able to stand trial, a trial date was set and the case was tried to a verdict. The appellant has been able to show no prejudice resulting from the delay. Under these circumstances, we do not find that the length of the delay violated appellant's Sixth Amendment guarantee.
 
 III
 
 11
 Appellant claims that there was but one receipt and possession of the pistol and Ball v. United States, 470 U.S. 856 (1985) precludes conviction on both counts. In Ball it was conceded that both counts rested on the same conduct, and the court found that a single act may not establish unlawful receipt and unlawful possession of the same weapon.
 
 
 12
 Ball is not applicable to the present facts. The appellant received the weapon on August 14, 1986, when he took it into the Outdoor Store and pawned it. This act of receipt was separate and distinct from the act of possession on September 3, 1986, when appellant redeemed the weapon and took possession of it. The Supreme Court was careful in Ball not to extend its holding, and it stated:
 
 
 13
 We have no occasion to consider here whether a felon may be convicted of both offenses if he possessed a firearm on one occasion and, after giving up possession, later reacquired the gun, see, e.g., United States v. Robbins, 579 F.2d 1151 (1978).
 
 
 14
 470 U.S. at 859 n. 6.
 
 
 15
 We faced a similar issue in United States v. Stevens, 817 F.2d 254 (4th Cir.1987). Stevens attacked his convictions of possessing a .357 magnum in July 1985 and again in September 1985. We affirmed the convictions because there had been a break in the possessions. The evidence showed that Stevens had possessed the weapon in July 1985 and that he had possessed the same weapon in September 1985, but between these two dates the evidence supported the conclusion that possession had been in a third party.
 
 
 16
 The evidence, viewed in the light most favorable to the government, supports a finding that appellant received the pistol on August 14, 1986, when he pawned it at the Outdoor Store, and that he came into possession of the pistol again on September 3, 1986. During the intervening time possession of the firearm was in the Outdoor Store. Therefore, the acts of receiving and possessing were separate and distinct and they are not duplicitous.
 
 
 17
 AFFIRMED.